403 P.2d 8

**Carl LEHMAN and Sylvia Lehman, husband and wife, Appellants,**

v.

**W. W. WHITEHEAD and Margaret Whitehead, husband and wife, Don Woods Realty, an Arizona corporation, Jack Solomon, Appellees.***

**I CA–CIV 48.**

Court of Appeals of Arizona.
June 15, 1965.

to this Court pursuant to Section 12–120.23 A.R.S.

Cox & Cox, by Alfred S. Cox, Phoenix, for appellants.

Lewis Roca, Scoville, Beauchamp & Linton by Monroe G. McKay, Phoenix, for appellees Don Woods Realty and Jack Solomon.

William L. McClain, Phoenix, for appellees W. W. Whitehead and Margaret Whitehead.

DONOFRIO, Judge.

Appellants Carl Lehman and Sylvia Lehman, his wife, who were plaintiffs below, appeal from a judgment in favor of W. W. Whitehead and Margaret Whitehead, his wife, Don Woods Realty, an Arizona corporation, and Jack Solomon, who were defendants. Hereafter the parties will be referred to as they appeared in the trial court.

The defendants Whitehead were the owners of a shopping center in Phoenix, which consisted of seven rentals. They listed the property for sale with the defendant, Don Woods Realty, in June, 1958. The property was shown by the defendant, Jack Solomon, a salesman for Don Woods Realty, to Mr. and Mrs. William Chester. The Chesters were related to the plaintiffs, who lived in New Mexico, and were looking for a piece of rental property for the plaintiffs. The Chesters, learning the real estate agency had the property listed, contacted Mr. Solomon. Mr. Solomon, in interesting the Chesters and plaintiff in the property, represented what the income from the shopping center was by telling them what the monthly amounts of the leases from the individual tenants were. The leases for two of the store rooms were to Mr. George F. Watson, who ran a grocery store in one and a meat market in the other. The particular leases which were for four and one half years, provided for a combined monthly rental of $525.00. Actually Mr. Watson, whose business was slow, had been paying $400.00 a month on the leases. This fact was not known to the plaintiffs. The Chesters had made some investigation of the store by conversing wtih Mr. Watson and trading there for groceries. Mr. Chester also checked with the Asscciated Grocers with whom Mr. Watson did business. Mr. Chester, on behalf of the plaintiffs also employed a professional appraiser to get an opinion as to the value of the shopping center, informing him of the amounts of the rentals provided in all of the leases as reported to him. The appraiser gave plaintiffs an opinion that the property was worth $100,000.00. Plaintiffs thereafter made an offer to the owners, through the real estate agent, of $100,000.00 for the shopping center which was accepted. It was not until after the sale had been consummated that the plaintiffs learned through Mr. Chester that the monthly rental payment from Mr. Watson on the grocery and meat market had been $400.00 rather than $525.00 as called for in the leases.

Plaintiff electing to keep the property, filed this action against the owners, the real estate agency and the salesman who sold the property, seeking to recover damages based upon misrepresentations of these defendants as to the rental income of the tenant Watson. The case was tried before

the court on the theory of fraud and at the close of the plaintiffs' case the court, on motions duly made, granted judgment for all the defendants under Rule 41(b) Rules of Civil Procedure, making findings and conclusions. The court's findings were that the plaintiff had failed to prove by clear and convincing evidence (1) that the defendants made any false representations to the plaintiffs, (2) that the plaintiffs relied upon the allegedly false representations, (3) that the representations allegedly false and allegedly relied on were material to the decision to purchase the property, and (4) and, as to defendants Don Woods Realty and Jack Solomon, the plaintiffs had failed to prove by clear and convincing evidence that these defendants had any knowledge of any facts which would make the representations made false.

The court made conclusions of law whereby it concluded that a judgment for fraud required clear and convincing proof of the nine elements of fraud and that defendants were entitled to judgment because plaintiffs failed to prove by clear and convincing evidence these elements.

■ First, we shall consider the conclusions of law applied by the court. Since the nine elements of fraud which we deem unnecessary to list at this time were first set out in Moore v. Meyers, 31 Ariz. 347, 253 P. 626 (1927), the Supreme Court has without exception held that "[i]t is fundamental in this jurisdiction that 'there can be no actionable fraud without a concurrence of *all* the elements thereof'. Wilson v. Byrd, 79 Ariz. 302, 304, 288 P.2d 1079, 1081". Cullison v. Pride O'Texas Citrus Association, 88 Ariz. 257, 259, 355 P.2d 898 (1960). A failure to prove any one of the elements by proof which is clear and convincing would be fatal to any case sounding in fraud. Cullison v. Pride O'Texas (supra).

We have examined the elements of fraud and burdens of proof employed by the trial court and find they are in keeping with the principles of law announced by the above cited and other decisions by our Supreme Court.

■ Counsel are in accord and we are in agreement with them that under Rule 41(b) Rules of Civil Procedure, 16 A.R.S., a trial court in deciding a motion to dismiss at the end of plaintiff's case may pass on the credibility and conflicts of evidence and grant a motion on the merits provided special findings are made. Joseph v. Tibsherany, 88 Ariz. 205, 354 P.2d 254 (1960).

Rule 52(a), Rules of Civil Procedure, A.R.S. provides:

> " * * * Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses. * * *"

■ The sole issue now before us is whether the evidence supports the findings of fact and judgment of the trial court. Pursuant to the provisions of Rule 52(a) supra, this court will not set aside the court's findings unless there is a showing that they are clearly erroneous, and due regard being given to the opportunity of the trial court to judge the credibility of witnesses.

We have carefully reviewed the transcript, exhibits and deposition and find that in weighing the evidence the trial court could reasonably have believed the following facts: Defendant Whitehead listed his shopping center for sale with Don Woods Realty (broker) and in giving information to Don Woods Realty and Jack Solomon (Don Woods' salesman) told them that he had numerous leases and that the ones for the grocery store and meat market covering Mr. Watson were written leases in the total amount of $525.00 per month. In fact this was not disputed. The availability of the property for sale came to the attention of plaintiffs through their agents, Mr. and Mrs. Chester. The plaintiff, Mr. Lehman, was an experienced businessman and their agents were experienced in buying property, one of them being a lawyer of many years experience. Defendant Solomon told plaintiffs' agents that the owner of the shopping center would sell it for $134,000 and that he had leases for the various de-

358

partments, including the grocery and meat market of $525 per month. The plaintiffs and their agents, Mr. and Mrs. Chester, dealt exclusively with defendant Solomon and no representations were made to them by anyone other than Mr. Solomon. Mr. Solomon testified that he took all his information from the leases, that all of his representations were as to the leases, and that it was normal for real estate men to rely on written leases.

After being told about the price and the leases, plaintiffs' agents undertook an examination of the property, which included numerous trips to the site to examine the property, conversations with Mr. Watson, the tenant of the grocery department, calling the Associated Grocers to determine if Mr. Watson was a good grocer and making checks on the credit and standing of Mr. Watson, and hiring an experienced appraiser who provided them with an appraisal of the property.

Mr. Whitehead testified that despite the fact that Mr. Watson was delinquent he intended to enforce the lease and collect the full amount of rent due, and that he never agreed to reduce the rent. He further testified he had consulted an attorney about collecting the rents from Mr. Watson.

Plaintiffs contend there is no credible conflict in the evidence and that they have established the nine elements of fraud by clear and convincing evidence. We believe the foregoing demonstrates the fallacy of the contention.

■ From the evidence the court could well have found that there were valid leases on the store rooms in question calling for a monthly rental of $525. Whereupon he would be justified in finding that no false representation was made. In listing the shopping center for sale the owner provided the broker with the underlying leases for the various tenants and the broker consummated the sale based on those leases. It

was admitted the leases call for $525 rent and there is no evidence of any negotiations to change them. The testimony of Mr. Whitehead was to the effect that no agreement to accept sums other than those called for in the leases was ever entered into. We note also in reading the testimony of Mr. Watson that although he made $400 payments, he also made two $500 payments.

In addition the plaintiffs questioned and investigated Mr. Watson himself and there is no evidence that this tenant withheld any information or misrepresented his situation. The court could have concluded this was an arm length transaction and that there was no evidence of concealment or attempting to keep plaintiffs from discovering anything they sought to discover.

We find evidence equally supporting the other findings of the court, however, we deem it unnecessary to further consider the matter as the failure to sustain any element of fraud is fatal.

In Cullison v. Pride O'Texas Citrus Association, (supra) the Supreme Court held:

"In reviewing the refusal of a trial judge, sitting without a jury, to find fraud we are bound to sustain that action if the record shows that as to any of the essential elements, the trier of fact was reasonably justified in finding that the party alleging fraud failed to meet the standard of clear and convincing proof." 88 Ariz. 257, 259, 355 P.2d 898, 899 (1960).

■ It is not our prerogative to weigh evidence and determine credibility of witnesses. This is the task of the trial judge who sees and hears the witnesses. In this case where there is a conflict in competent evidence this court will not upset the findings of the trial court.

Judgment affirmed.

STEVENS, C. J., and CAMERON, J., concur.