414 P.2d 988

In the Matter of the ESTATE of C. H. TRIGG, also known as Clarence H. Trigg, Deceased.

Marjorie H. Trigg BERGMAN, Appellant,

v.

Donald H. TRIGG, Helen Gardner Cypert and Laura Lee Trigg, Appellees.

No. I CA–CIV 186.

Court of Appeals of Arizona.

June 3, 1966.

Rehearing Denied July 5, 1966.

**386**

Westover, Keddie & Choules, by William H. Westover, Yuma, for appellant.

Brandt & Baker, by Ralph F. Brandt, Yuma, Benton & Case, by F. Keith Benton, Yuma, for appellees.

DONOFRIO, Judge.

. This is an appeal from a judgment admitting the last will and testament of Clarence H. Trigg, deceased, to probate and denying the contestants' opposition to said probate.

The petition was filed by decedent's son, Donald H. Trigg, who was named executor in the will. Appellant, Marjorie Trigg Bergman, was contestant and opposed the will claiming that her common-law marriage to the decedent invalidated the will under § 14–134 A.R.S. and that as decedent's wife she was entitled to letters of administration. The matter was tried before the court as a will contest and the court made findings of fact and conclusions of law and denied contestant's application for letters and opposition to the will and admitted the will to probate.

The deceased, Clarence H. Trigg, had been a resident of Yuma County for some forty five years prior to his death on the 18th of November, 1963. He left surviving him his son Donald and a granddaughter who together with a Mrs. Helen Cypert were beneficiaries under the will in question which was executed by him on August 10, 1959. He was unmarried at the time. Mr. Trigg, also referred to as decedent, became acquainted with appellant, also referred to as Marjorie, in 1949 while she was married to a serviceman who was stationed in Yuma. She and her husband rented an apartment from him. This apartment was across the street from Trigg's living quarters and he frequently visited with her. The husband was transferred from Yuma the early part of 1950 and several months later was discharged from the service. Marjorie and her husband returned to live in Yuma and the husband was given a job by Mr. Trigg. A close relationship apparently developed between decedent and appellant. In the fall of 1950 appellant returned to Florida with her husband and kept in touch with decedent by letters and phone calls. In 1960 she returned to Yuma for a few days as decedent's guest at which time she admits carrying on an intimate affair with him.

After appellant returned to Florida she filed an action for divorce from her husband which was granted on May 23, 1960. On May 26, decedent left Yuma for Jacksonville, Florida, and before leaving stated that he was going to Jacksonville to marry appellant. In Florida, decedent presented appellant with an engagement ring and made statements to others that he was much in love with her and that they were going to be married. According to appellant, decedent brought certain papers to her around noon on May 28th stating she had to sign them in order for them to secure a marriage license. She signed them without reading their contents. In the evening he returned to her and they then asked ministers of her church to marry them but were turned down because they both had been divorced. They drove around the city and found a church that was open, went inside and had the minister perform a marriage ceremony after which

they signed the church register. She was given a wedding ring at the time. They spent the night and consummated the marriage in a motor lodge. The next day decedent declared to witnesses that they had been married. They thereafter visited her parents in Georgia where it was announced to the family and friends that they were married. On their way back to Yuma they visited friends telling them of their marriage. In Yuma they lived and held themselves out to the general public as married. They appeared as husband and wife on legal instruments which they executed including deeds, financial statements, income taxes, and health and accident policies. They also made trips to foreign lands as husband and wife.

■ If decedent was married to appellant the will made by him before their marriage would ipso facto be revoked unless he had mentioned or provided for her as stated in A.R.S. § 14–134. Estate of Anderson, 14 Ariz. 502, 131 P. 975 (1913); Estate of Stark, 52 Ariz. 416, 82 P.2d 894 (1938). The will does not mention appellant and there is no evidence that any provision was ever made by decedent for her within the meaning of the law, therefore, the sole issue is whether appellant was the lawful wife of decedent at the time of his death.

■ Our statutes require a license and the solemnization of marriages contracted within this state, A.R.S. § 25–111. They specifically provide, however, for recognition of the validity of marriages valid by the laws of the place where contracted, A.R.S. § 25–112. We also recognize a valid common-law marriage of another jurisdiction. See Roy v. Industrial Commission, 97 Ariz. 98, 397 P.2d 211 (1964). The ceremony which forms the basis of the claimed marriage having occurred in Florida we apply the laws of that jurisdiction. Florida recognizes common-law marriages. See In re Colson's Estate, Fla., 72 So.2d 57 (1954); Chaachou v. Chaachou, Fla.,

73 So.2d 830 (1954); Jordan v. Jordan, Fla., 89 So.2d 22 (1956).

■ The court in its findings found that a marriage ceremony took place and that it was performed by a person and in a church. His findings in this respect are supported by the evidence and cannot be set aside. The findings of a trial court unless "clearly erroneous" cannot be set aside. Rule 52(a), Rules of Civil Procedure, 16 A.R.S. In re: Estate of Bond Sneed McCauley 100 Ariz. ——, 415 P.2d 431 (decided by Arizona Supreme Court May 11, 1966), Lehman v. Whitehead, 1 Ariz.App. 355, 403 P.2d 8 (1965). The appeal therefore resolves itself around the validity of the ceremony into which the parties entered.

We set forth the findings pertinent to the question. The court found that decedent represented to appellant that they were going to get married and that he made arrangements for their marriage ceremony, that in his mind these were false and fraudulent representations, that by these false and fraudulent representations he caused appellant to stand with him before a minister in a church and go through a wedding ceremony. The court further found that decedent had informed appellant before the marriage that he was going to secure a marriage license and had her sign some papers but in fact no legal license was obtained or marriage certificate signed. Further, that from May 8, 1960, the date of the ceremony, to the time of death the two lived openly and notoriously as husband and wife cohabiting together. The court also found that decedent never had any intention of entering into a valid marriage. The court then concluded that all of the elements of a common-law marriage as recognized by the State of Florida were not present. That there was no agreement between the parties in praesenti to become husband and wife.

In Roy v. Industrial Commission (supra), at page 100 of the Arizona Reports, at page 213 of 397 P.2d, our Supreme Court

cites with approval the following from an earlier case:

"Both the law and public policy favor matrimony and when it is once shown that a marriage has been celebrated, the contract, the parties' capacity to enter into it, and in fact every act necessary to its validity, will be presumed, in the absence of proof to the contrary. The presumption that it was legal and valid in all respects is of the strongest known to the law, * * *. Kolombatovich v. Magma Copper Co., 43 Ariz. 314, 318, 30 P.2d 832, 834."

Kolombatovich (supra) was cited with approval by this court in Wilson v. Wilson, 1 Ariz.App. 77, 399 P.2d 698 (1965).

The court having found a marriage had been celebrated this strong presumption of its legality requires us to determine if there is evidence or legal basis for the court to overturn it. The learned trial court in his memorandum opinion agreed that where all the facts are sufficient to establish a common-law marriage, the marriage will be binding notwithstanding mental reservations and secret intentions of one of the parties not to be married. The court, however, concluded that the instant marriage was not established by reason of the fact that there was no agreement between the parties in praesenti to become husband and wife. The following which appears in the court's conclusions of law shows a basis for this ruling:

"The elaborate provisions made by the said Clarence H. Trigg to cause the contestant to enter into a mock wedding ceremony show conclusively that he was guilty of false and fraudulent dealings and false representations and established conclusively that he had no intention of entering into a valid marriage with the contestant * * *

The fact that one party alone intends to enter into a marriage is not sufficient to create a valid common-law marriage."

With this we cannot agree.

First, appellees have not advanced the theory of fraud in the formation of the issues or in their presentation of the evidence. Secondly, fraud is not to be presumed and when urged must be proven in each of the elements by clear and convincing proof. Higgins v. Kittleson, 1 Ariz.App. 244, 401 P.2d 412 (1965). Notwithstanding its non-applicability we have considered the case in the light of this theory and cannot find any support for it. There is no finding of fact that appellant ever knew of any false representation or fraudulent intent upon the part of deceased. Nor is there evidence from anyone that decedent entered into the ceremony with the reservation not to marry. Such a conclusion can only be based on a supposition deduced from such facts as the non-existence of a license or certificate of marriage. The license itself is not vital to a common-law marriage and any secret intention or reservation on the part of decedent would not affect the binding effect of the ceremony.

There is insufficient evidence to sustain the court's finding that there was no intention to enter into a valid binding marriage. When findings of fact are clearly erroneous it is the duty of this court to set them aside. Brown v. City of Phoenix, 77 Ariz. 368, 372 P.2d 358 (1954). We find present the essential element of an agreement with a mutual consent to marry per verba de praesenti. In re Hind's Estate, Fla.App., 135 So.2d 13 (1961); Marshall v. Sarar, Fla., 118 So.2d 258 (1960); McBride v. McBride, Fla.App. 1961, 130 So.2d 302.

Reversed.

STEVENS, C. J., and ROBERT O. ROYLSTON, Superior Court Judge, concur.

NOTE: Judge JAMES DUKE CAMERON having requested that he be relieved from consideration of this matter, Judge ROBERT O. ROYLSTON was called to sit in his stead and participate in the determination of this decision.