454 P.2d 577

**Charles F. OWEN and Julia M. Owen, Appellants,**

**v.**

**Evan MECHAM and Florence Mecham, his wife, Appellees.**

**No. I CA–CIV 692.**

Court of Appeals of Arizona.

May 22, 1969.

Rehearing Denied June 19, 1969.

Review Denied July 8, 1969.

Biaett & Bahde, by Kenneth Biaett, Phoenix, for appellants.

Rawlins, Ellis, Burrus & Kiewit, by Chester J. Peterson, Phoenix, for appellees.

CAMERON, Judge.

This is a suit on a note and mortgage and a counterclaim for breach of contract. From a judgment against the plaintiffs and in favor of the defendants on both the complaint and the counterclaim, plaintiffs appeal.

We are called upon to determine:

1. Whether the plaintiffs had the right to accelerate the note and mortgage.
2. Whether the facts support the finding by the trial court on defendant's counterclaim.

In February of 1961 the plaintiffs, Charles F. Owen and Julia M. Owen, hus-

band and wife, sold some property to the defendants, Evan Mecham and Florence Mecham, husband and wife. The transaction was placed in escrow with the Arizona Title Guarantee and Trust Company of Phoenix, Arizona. The total purchase price was $36,000 with $6,000 being paid prior to the close of escrow and the balance payable in annual principal installments; $2,500 or more on 15 July 1961; $3,500 on the 15th of July 1962; and $3,500 on the 15th of July each succeeding year until paid, said amounts to be paid plus the interest at the rate of 6%.

A note for this amount was signed and contained the provision "should default be made in the payment of any installment when due, the whole sum of principal and interest shall become immediately due and payable at the option of the holder of the note". The realty mortgage also contained an acceleration clause.

The escrow instructions before this court contained the following statement:

"Buyer and seller herein mutually agree and understand that the south 50 feet of the within described property shall be dedicated for roadway purposes. It is further agreed and understood by the buyer and seller that the seller shall, prior to March 15th, 1964, install curbs and pave the south 25 feet of said roadway at his expense, and that the buyer shall, prior to March 15th, 1964, install curbs and pave the north 25 feet of said roadway at his expense."

The title company was designated the collection agent for the payments but the parties adopted a policy of paying and accepting money directly and the file indicates that the title company was notified of some payments which were made directly to the plaintiffs. The record indicates that the 15 July 1961 payment was made when due and that the second payment was made on 17 July 1962, two days late. In 1963 Charles Owen went to the defendant's office and payment was finally made directly to him on 24 July 1963. In 1964 plaintiffs had the title company write the

defendants, on 13 July 1964, reminding them that the amount was due and owing as of the 15th of July. Nonetheless, the plaintiffs were forced to contact the defendants personally and payment was not made until 3 August 1964. In 1965, plaintiffs asked Arizona Title to again remind defendants the payment would be due on 15 July and the following letter was sent on 13 July 1965:

"Dear Mr. & Mrs. Mecham:

"Our records indicate that we have not credited the above account with the payment due

July 15, 1965 of $3,500.00

We have been requested to contact you in this connection by the payee thereunder,

Mr. and Mrs. Chalres (sic) Owen

If your remittance has been forwarded would you please advise us. If not your prompt attention to this matter will be appreciated.

Very truly yours,

Payment Accounting Department

By Pollyanna Spencer                "

Payment was not made and on 24 August 1965 plaintiffs directed the title company to turn the note and mortgage over to their attorney for foreclosure purposes. Complaint to foreclose the mortgage was filed 1 September 1965 alleging a balance due of $15,384.84, plus interest, from 15 July 1965. The affidavit of service and process shows that the defendants were served on 1 September 1965. Defendants, through their attorneys, thereafter tendered payment of principal and interest for 1965 to the attorney for the plaintiffs and when tender was refused, tendered payment to the Arizona Title Guarantee and Trust Company on 17 September. The title company cashed the check and then returned to the defendants on 22 September, by their check, the amount that had been tendered.

The answer of the defendants alleged that the plaintiffs had failed to comply with the obligation under the said contract for paving of the street and counterclaimed

for breach of contract in the amount of $20,000. The facts are contested on this matter although it does appear that before the suit, and after considerable negotiations, the easement was changed to include a 10 foot strip of defendants' property for which the defendants were allowed a credit of $985.50. The roadway was also abandoned by the City of Glendale with the concurrence of the successors in interest to the Owens (as to the property originally retained by the Owens).

## ACCELERATION OF THE NOTE AND MORTGAGE

■ We must first consider whether there was sufficient evidence taken in the light most favorable to the defendants to support the trial court's finding that the plaintiffs waived their option to accelerate the note and mortgage. The matter was tried to the court and findings of fact and conclusions of law were requested. Keeping in mind that a suit to foreclose a mortgage is an equitable action, Arizona Coffee Shops, Inc. v. Phoenix Downtown Park. Ass'n, 95 Ariz. 98, 387 P.2d 801 (1963), the following findings of fact, pertinent to this question, were entered:

"That plaintiff had accepted previous payments due for the years 1962, 1963 and 1964, and after the due date, and gave no notice to defendant that he would not accept subsequent late payments after July 15, 1965, that plaintiff had the option to declare the entire balance of the note and mortgage due if any payments were made late, according to the original agreement, but not exercise such option until September 1965, at which time plaintiff attempted to exercise said option without giving defendant any prior notice of said intention."

And the following conclusions of law:

"That by reason of plaintiff's conduct relative to the payments required in the note and mortgage, plaintiff is estopped to declare defendant in default and ac-celerate the payments as plaintiff attempted to do in September 1965.

"That since plaintiff had breached the original sales agreement, plaintiff was not entitled to declare defendant in default."

■ A reading of the transcript of record supports the basic facts found by the trial court that the defendants had paid and plaintiffs had accepted late payments in the manner indicated by the trial court. We may not set aside the trial court's findings unless they are shown to be clearly erroneous. Lehman v. Whitehead, 1 Ariz.App. 355, 403 P.2d 8 (1965). We are not bound, however, by the trial court's conclusions of law and may draw our own legal conclusions from the undisputed facts. Sanders v. Brown, 73 Ariz. 116, 238 P.2d 941 (1951).

■ We do not believe that as a matter of law the plaintiffs waived their right to accelerate the note and mortgage. The facts indicate that the plaintiffs did everything reasonably expected to impress upon the defendants the fact that they wanted the money paid on the due dates. The defendants had notice on 13 July 1965 and did nothing until after they were served on 1 September 1965. The mere acceptance by the plaintiffs of previous late payments without anything more did not create in itself an estoppel or a waiver of the right to demand and expect that the annual installments would be paid as agreed. It cannot be construed from these actions as a matter of law that plaintiffs waived their right to insist on prompt payment or that they are by their actions estopped to deny defendants' claim that they did waive their right:

"* * * Even those cases which hold that, by the course of conduct, there is established a waiver of the right to insist on the strict terms of the note or of the contract cannot be extended so as to include a case in which the indulgences were never acquiesced in, and were forced from the other party over his protest. Here the record shows that

**532**

although it is true that the four preceding installments were tardily paid, this tardiness was never voluntarily agreed to by the holder of the note. On the contrary, it is shown that on each occasion the plaintiff protested and did all that it could to force the maker to make payment punctually, and that the delays resulted not from any acquiescence but solely from the inability of the plaintiff to force the maker to make payment on time. * * *" Rex Credit Co. v. Kirsch, La.App., 4 So.2d 797, 799 (1941).

## BREACH OF CONTRACT

■ The question concerning breach of contract is confused, it appearing that the parties agreed that by 1964 they would pave both sides of the street and that was not done. The Owens sold their property adjacent to the Mechams' property to another person and the easement was later abandoned:

> "As a general rule, where an action to foreclose a mortgage is, in effect, one to recover money on contract and the amount of the mortgage debt is in issue and plaintiff seeks to enforce defendant's personal liability by a deficiency judgment, defendant may counterclaim or set off a claim or demand against plaintiff which is connected with the mortgage transaction and affects the consideration thereof, * * *." 59 C.J.S. Mortgages § 619, para. a, p. 1086.

A setoff or counterclaim does not constitute payment. Associated Oil Co. of Wyoming v. Rector, 97 Colo. 387, 50 P.2d 551 (1935).

■ We believe that the facts are sufficient from which the trial court could find that there was a breach of the parties' contract and that the defendants were damaged thereby and in the amount found by the court. Therefore, the amount of the damages for breach of contract is affirmed.

The matter is reversed and remanded with directions that the trial court rein-state the complaint, grant judgment thereon in an amount to be determined consistent with this opinion, and allow a setoff as to the damages incurred by the Mechams. The complaint being allowed, attorney's fees and costs may be allowed to the plaintiffs as the court shall determine after proper hearing.

DONOFRIO, C. J., and STEVENS, J., concur.