ROBERT L. COX, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cox v. Commissioner
Docket No. 7792-75.
United States Tax Court
T.C. Memo 1977-360; 1977 Tax Ct. Memo LEXIS 79; 36 T.C.M. (CCH) 1435; T.C.M. (RIA) 770360; October 11, 1977, Filed *79 Held, the amount of allowable deductions for child care, medical care, business expenses, and personal exemptions, determined. Held, further, the addition to tax of sec. 6653(a), I.R.C. 1954, for negligence, imposed. Robert L. Cox, pro se. Milton J. Carter, Jr., for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined a deficiency of $2,400.50 in the petitioner's 1972 Federal income tax and an addition thereto of $120.03 under section 6653(a) of the Internal Revenue Code of 1954. [1] Due to concessions by the petitioner, the only issues remaining for decision are: (1) Whether he is entitled to claim Robert and Shannon Cox and Traci Easter as dependents; (2) whether he is entitled to deduct the costs of child care provided to Lisa and Kenneth Cox and Traci Easter; (3) whether he is entitled to deduct the medical expenses he claims to have paid on behalf of Edith Easter; (4) whether the petitioner is *82 entitled to a deduction for business expenses in excess of the amount allowed by the Commissioner; and (5) whether any part of the petitioner's underpayment was due to negligence or intentional disregard of the rules and regulations within the meaning of section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioner, Robert L. Cox, resided in Phoenix, Ariz., when he timely filed the petition herein. He filed his 1972 Federal income tax return with the Internal Revenue Service, Ogden, Utah. During 1972, the petitioner was an insurance agent affiliated with the New York Life Insurance Company. In April 1972, he purchased a Hermes typewriter, which he believes cost $492. In May 1972, he had personal stationery printed, which he used in his insurance business. He estimates that such stationery cost $375, and such price apparently included the cost of the plates. During the trial of this case in December 1976, the petitioner still had some of the stationery. The petitioner paid a part-time typist to set up *83 and type certain standard letters on his new stationery. From May through December 1972, he employed a typist 2 or 3 days a week at an hourly rate of $1.25 or $1.50 an hour. He usually paid such amounts by check, but he did not save his cancelled checks, nor did he use them in computing the deduction he claimed for such expense. During 1972, the petitioner also incurred advertising expenses in connection with his insurance business. Seventy-five percent of such advertising expenses was paid by New York Life Insurance Company. The total cost of such advertising was approximately $225. Finally, the petitioner paid dues of $35 to NALU, a professional organization. Sometime prior to 1970, while the petitioner was in the military, he began dating Edith Easter. After they had dated for about 3 months, the petitioner decided to end the relationship, but within 3 weeks thereafter, Edith told him shw was pregnant. In 1970, Edith gave birth to their daughter, Lisa Cox. Although the petitioner had been living with Edith, he moved out sometime prior to October 1970 because of certain difficulties, but he returned in October 1970. Shortly thereafter, Edith became pregnant again and, *84 in June 1971, gave birth to their son, Kenneth. Between June and September 1971, Edith was having medical problems requiring her to have major surgery in September 1971. After the surgery, Edith was found to have cancer, and during the latter part of 1971 and January of 1972, she received cobalt treatments. The petitioner estimates Edith's medical costs to total $2,700, in addition to a surgeon's fee of $500, all of which was paid in 1972 except for $100 paid in 1971 to secure her release from the hospital. In 1971, Edith was employed by a legal aid office until May when she took a leave of absence in preparation for the birth of her child. She resumed working in April or May 1972. Until August 1972, the petitioner lived with Edith Easter and their children Lisa and Kenneth Cox in Phoenix, Ariz. Also residing in that household was Traci Easter, a child Edith had with another man. Although the petitioner considered Edith to be his common law wife prior to and throughout the year in issue, he never married her in a religious or civil ceremony. Nothing of record suggests that the petitioner and Edith Easter ever lived together in any State other than Arizona. Due to various *85 difficulties, in August 1972, the petitioner left the home he shared with Edith and the three children and moved into an apartment. He continued to see all three children; they spent about 25 percent of the time with him and 75 percent of the time with Edith. Throughout 1972, Lisa and Kenneth Cox and Traci Easter were sent to a nursery. The petitioner paid the cost of such child care through August 1972 and thereafter frequently reimbursed Edith for the cost of such care. The total cost of child care for the three children was $2,220. The petitioner was also the father of two other children--Robert and Shannon Cox. Those children did not live with the petitioner during 1972; they lived with their mother, Violetta Brown. The petitioner gave Violetta some cash during 1972, and he bought Robert and Shannon clothes at various times during the year and toys at Christmas. He did not pay Violetta's rent or utility costs and does not know what amounts she contributed to the support of the children. He believes that she received governmental aid of about $39 a month for Robert but does not know what other amounts she may have received on behalf of the children. On his 1972 Federal *86 income tax return, the petitioner deducted child care expenses of $2,400.00, various business expenses totaling $3,417.00, medical and dental expenses of $2,713.48, six personal exemptions, and other expenses not in issue. In claiming various deductions, the petitioner did not consult any records that he claims to have had; he merely approximated the amounts of such deductions. The Commissioner determined that the petitioner was not entitled to any deduction for child care expenses, that he was entitled to business expenses of only $828, that he was entitled to a medical expense deduction of $68 for premiums for medical insurance, and that he was entitled to only three personal exemptions. OPINION The first issue we must decide is whether the petitioner may claim as personal exemptions Robert and Shannon Cox and Traci Easter. The legal issue arising with respect to his two children differs somewhat from that arising with respect to Traci; thus, we will deal with each in turn. Section 151(a) allows a deduction for each personal exemption to which an individual is entitled.Section 151(e) provides an exemption for a child of a taxpayer if that child is a "dependent" as defined *87 in section 152.Section 152(a) defines a "dependent" to mean a taxpayer's son or daughter if the taxpayer provides more than half of his or her support. The petitioner bears the burden of establishing that he furnished the requisite support to obtain a dependency exemption. Stafford v. Commissioner,46 T.C. 515, 517-518 (1966); Rivers v. Commissioner,33 T.C. 935, 937 (1960). It is the Commissioner's position that the petitioner is not entitled in 1972 to claim exemptions for Robert and Shannon Cox because he has failed to establish that he provided more than one-half of their support during such year. We agree with the Commissioner. According to the petitioner's best guess, in 1972, he supplied Violetta Brown with $600 in cash for the children, and in addition, he gave the children toys and clothing costing $600. In other words, the petitioner claims, without any supporting records or documents, that he paid about $50 a month for each child.However, there is no evidence relating to the total costs of support of the children--that is, we do not know the cost of their housing, food, and other necessities. Consequently, on this record, we are unable *88 to find that the petitioner furnished more than one-half of the support for Robert and Shannon Cox. We appreciate that the petitioner furnished some support for the two children, and we understand his difficulties in proving the total support for the children; nevertheless, on this record, we are required to hold that he is not entitled to deductions for such children. Since Traci Easter is not related to the petitioner in any of the ways specified in section 152(a)(1) through (8), she can qualify as his dependent only under paragraph (9) thereof, which applies to an individual "who, for the taxable year of the taxpayer, has as * * * [her] principal place of abode the home of the taxpayer and is a member of the taxpayer's household." Section 1.152-1(b), Income Tax Regs., provides that section 152(a)(9) applies to an individual who lives with the taxpayer and is a member of the taxpayer's household during the "entire taxable year of the taxpayer." We have upheld the validity of such regulations in Trowbridge v. Commissioner,30 T.C. 879 (1958), affd. per curiam 268 F. 2d 208 (9th Cir. 1959); see McMillan v. Commissioner,31 T.C. 1143 (1959). *89 It is undisputed that Traci lived in the petitioner's household only through August 1972, at which time the petitioner established his household elsewhere. While thereafter Traci visited the petitioner on weekends, she lived in her mother's household, and spent 75 percent of her time with her mother. Clearly, thereofre, Traci did not, during all of 1972, have her principal place of abode in the petitioner's home, nor was she during all of 1972 a member of his household. Hence, despite the petitioner's attitude toward Traci and the support furnished her, the law provides that he is not entitled to claim her as a dependent during such year. The next issue for decision is whether the petitioner is entitled to deduct the cost of child care provided for Lisa and Kenneth Cox and for Traci Easter during 1972. During that year, section 214, in general, provided a deduction for amounts paid for the care of a "qualifying individual," but only if such expenses are incurred to enable the taxpayer to be gainfully employed. A "qualifying individual" under section 214(b)(1) was limited to a taxpayer's spouse or his dependents.Since we have held that Traci Easter does not qualify as the petitioner's *90 dependent, he is not entitled to any deduction for her under section 214. The Commissioner does not dispute that Lisa and Kenneth Cox were "qualifying individuals" and that the petitioner otherwise complied with section 214; however, he contends that the petitioner has not established what portion of the total $2,220 expended for child care was attributable to Lisa and Kenneth. In addition, the Commissioner argues that Edith Easter paid part of the cost of child care and the petitioner has not established what portion of the $2,220 was actually paid by him. After reviewing the evidence of record, we have concluded that the Commissioner's total disallowance of the petitioner's child care deduction was in error; of the $2,220 paid for child care, we are convinced that the petitioner paid 90 percent of such amount and two-thirds of the amount he paid was allocable to the services provided Lisa and Kenneth. Cf. Cohan v. Commissioner,39 F. 2d 540 (2d Cir. 1930). The next issue is whether the petitioner is entitled to a medical expense deduction for 1972 in excess of the amount allowed by the Commissioner. In large part, this issue turns on whether the petitioner *91 is entitled to deduct the payments he made in 1972 for medical services provided to Edith Easter. The petitioner claims that since he and Edith were living together, he made the payments to the hospital when it demanded payment for the medical care; he belives that because he made such payments, he should be entitled to deduct them. In general, section 213(a) allows a taxpayer to deduct the cost of medical care for himself, his spouse, or his dependents. Under section 1.213-1(e)(3), Income Tax Regs., one's status as a spouse or dependent can be determined either at the time the expense was incurred or at the time the expense was paid. Edith Easter cannot qualify as the petitioner's spouse because they were never married in a religious or civil ceremony. In addition, Arizona does not recognize common law marriages unless validly created outside the State. Ariz. Rev. Stat. Ann. sec. 25-111 (1956); In re Estate of Trigg,3 Ariz. App. 385, 414 P. 2d 988 (Ct. App. 1966), affd. 102 Ariz. 140, 426 P. 2d 637 (1967). Since there is no evidence that the petitioner and Edith ever lived together in any State other than Arizona, he *92 cannot establish that Edith was his spouse either in 1971, when she received the medical care, or in 1972, when he paid for such care. Furthermore, Edith Easter cannot qualify as the petitioner's dependent during 1972 because she was not related to the petitioner as set forth in section 152(a)(1) through (8), and because her principal place of abode during 1972 was not with the petitioner for the entire taxable year as required by section 152(a)(9). Nor can she qualify as the petitioner's dependent during 1971, even though she lived in his household for the full year, because there has been no showing that he provided more than one-half of her support during that year. Stafford v. Commissioner,supra; Rivers v. Commissioner,supra. We know that she was employed until May 1971, but there is insufficient evidence to conclude that the petitioner furnished more than onehalf of her support during that year. [2] Thus, even though the petitioner paid for the medical care of Edith, the relationship between them does not satisfy the restrictions placed on the allowance of a deduction for such payments, and accordingly, we must sustain the Commissioner's *93 determination in this respect. The next issue is whether the petitioner is entitled to business expenses in excess of $828, the amount of such expenses the Commissioner allowed him to deduct. The petitioner claimed business expenses totaling $3,417 on his 1972 Federal income tax return, but he now recognizes that such claim was overstated. He concedes that $1,350 represents an amount he already deducted elsewhere in his return. He also concedes that he improperly deducted the cost of a Hermes typewriter and now accepts the Commissioner's depreciation deduction of $28 for such typewriter. The business expenses still in dispute include the petitioner's claim that he incurred advertising expenses of $225.00. However, he acknowledges that the New York Life Insurance Company paid 75 percent of such expenses; thus, he paid only $56.25 for advertising. *94 We have found as a fact that he paid $35 to NALU as professional dues. On the other hand, we cannot accept the petitioner's claim that he spent $1,100 for typists. He had no records to support this claim, and an analysis of the figures given in his own testimony shows that the total may have been substantially less than that claimed by him. On this record, we are not persuaded that he spent more than $500 for typing costs. Nor can we accept the petitioner's claim that he is entitled to deduct $375 for the cost of business stationery. According to his testimony, the purchase price included the cost of the plates, and the cost of the plates is a capital expenditure, not deductible in the year of acquisition. Sec. 263. In addition, he used only a small portion of such stationery during the year at issue, and his deduction is limited to the cost of that stationery used in 1972.Using our best judgment ( Cohan v. Commissioner,supra), we find the petitioner is entitled to a stationery deduction of $75. Since the total of his allowable business expenses does not $828exceed, the Commissioner's determination of a deduction in that amount is approved. The last issue *95 is whether the petitioner is liable for the 5-percent addition to tax provided in section 6653(a). Resolution of that question turns on whether any part of the petitioner's underpayment of tax was due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a).Since the Commissioner determined that such addition to tax was applicable, the petitioner bears the burden of proving that he was not negligent and did not intentionally disregard the Commissioner's rules and regulations. Vaira v. Commissioner,444 F. 2d 770 (3d Cir. 1971), affg. on this issue 52 T.C. 986 (1969); Bixby v. Commissioner,58 T.C. 757 (1972); Rosano v. Commissioner,46 T.C. 681 (1966). Under section 1.6001-1(a) and (e), Income Tax Regs., a taxpayer must keep "permanent books of account or records * * * as are sufficient to establish the amount of * * * deductions" and such records must be retained "so long as the contents thereof may become material in the administration of any internal revenue law." Yet, without any explanation whatever, the petitioner admitted that in 1974, when the IRS first contacted *96 him about his 1972 return, he had no receipts, checks, or other documents to support the bulk of his claimed deductions. In addition, although he claims he had available various records by which to compute the amount of deductions to which he was entitled, he admits that he did not consult such documents when he filled out his 1972 income tax return; he merely approximated such amounts. We have found that he claimed a number of deductions to which he was not entitled and grossly overstated other deductions, and these mistakes are clearly attributable to his failure to maintain and use records in the computation of his income. Even though we were favorably impressed by the petitioner's attitude and sense of responsibility, there remains the fact that he was negligent in the keeping and use of records and that such negligence caused an underpayment of his taxes. Under these circumstances, we must sustain the Commissioner's imposition of the addition to tax under section 6653(a). Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the year in issue.↩
2. We do not pass on whether during 1972, the relationship between the petitioner and Edith was in violation of local law within the meaning of sec. 152(b)(5) so that she could not qualify as his dependent under sec. 152(a)(9); the Commissioner has not raised this issue, and in light of our holding, its resolution is unnecessary.↩