O'NEILL PRODUCTION CREDIT ASSOCIATION, APPELLEE,
v. PUTNAM RANCHES, INC., APPELLANT, IMPLEADED
WITH PRUDENTIAL INSURANCE COMPANY OF AMERICA
ET AL., APPELLEES.

266 N. W. 2d 242

Filed May 31, 1978. No. 41446.

Marti, Dalton, Bruckner, O'Gara & Keating, for appellant.

Edward Hannon and Deutsch, Jewell, Otte, Gatz, Collins & Domina, for appellee O'Neill Production Credit Assn.

Heard before SPENCER, McCOWN, CLINTON, and BRODKEY, JJ., and COADY, District Judge.

McCOWN, J.

This is an action by plaintiff, O'Neill Production Credit Association, against the defendant, Putnam Ranches, Inc., for foreclosure of two real estate mortgages and a security interest in personal property. The District Court found that the defendant was indebted to the plaintiff in the sum of $2,634,-000.69, plus interest, and ordered foreclosure. The defendant has appealed.

The defendant is a corporation engaged in farming and ranching operations in Nebraska and South Dakota. For several years plaintiff and defendant had made arrangements in advance to take care of the defendant's financial requirements for the coming year. Late in the calendar year the defendant prepared a projection of the following year's cash requirements. A loan application was then prepared by the plaintiff credit association and submitted to the Federal Intermediate Credit Bank for its approval. Plaintiff was required to obtain permission from FICB for any loan in excess of 35 percent of plaintiff's capital. The loan to the defendant was in excess each year and the loan application was therefore subject to approval by FICB each year.

On January 7, 1974, the president of plaintiff, working from information supplied by the defendant, prepared a loan application for submission to FICB, seeking approval of a loan of $4,105,000 to defendant. The application showed the purpose of the loan to be renewal of outstanding loans of $2,754,-521.78, interest of $187,000, livestock of $500,000, operating expense of $503,478.22, and capital irrigation expense of $160,000, comprising the total commitment amount of $4,105,000.

The loan application was dated January 7, 1974, and the amount of indebtedness to be renewed was

shown as $2,754,521.78, the amount due on the 1973 loan on January 7, 1974. Plaintiff's president submitted a copy of the loan application to the FICB without presenting it to or having it signed by any officer of the defendant. FICB approval ordinarily required from 3 to 8 weeks.

During the period of time between January 7, 1974, and February 28, 1974, while awaiting FICB approval, plaintiff continued to advance funds to the defendant from time to time. Advances were charged against undisbursed commitments of $110,-389.83 under the 1973 loan until that commitment was exhausted, and thereafter plaintiff advanced funds in exchange for demand promissory notes executed by the defendant. Four demand notes were executed in the total sum of $247,000. Plaintiff advanced the total sum of $345,424.07 to defendant between January 7, 1974, and February 28, 1974. During the same period of time the defendant made repayments on its indebtedness in the total amount of $324,496.56.

In late February 1974, FICB approved the loan. On February 28, 1974, the loan application dated January 7, 1974, was signed on behalf of the defendant. On February 28, 1974, the defendant also executed the promissory note for $4,105,000. The note was dated January 7, 1974, and was payable on or before January 5, 1975. It provided for interest at 8.80 percent per annum, with provisions for adjustment of the interest rate on a monthly basis dependent on the interest rate for funds from the FICB.

The plaintiff already held a $1 million real estate mortgage executed by the defendant in 1970 to secure existing and future indebtedness to the plaintiff. On February 28, 1974, the defendant executed an additional $1 million real estate mortgage and a collateral note and agreement as security for the indebtedness represented by the promissory note for $4,105,000 dated January 7, 1974. On February 28,

1974, the defendant also executed a security agreement and financing statement covering the personal property. These are the mortgages which plaintiff seeks to foreclose in this action.

The loan summary and collateral record of the plaintiff reflecting defendant's indebtedness shows a renewal loan of $2,775,449.33, and undisbursed commitments of $1,329,550.67 on February 28, 1974. On March 1, 1974, the plaintiff reduced the undisbursed commitment amount on its loan summary and collateral record by $324,496.56. The reason noted for cancellation of the commitment was the amount of repayments between the date of the loan application, January 7, 1974, and the date of execution of the renewal note on February 28, 1974.

After February 28, 1974, the plaintiff advanced funds to the defendant from time to time. Total sums advanced by plaintiff to defendant from March 1, 1974, to January 5, 1975, amounted to $941,689.93. Amounts advanced from January 7, 1974, to January 5, 1975, were $1,303,866.69. On January 5, 1975, the loan summary and collateral record shows defendant's total indebtedness to be $2,676,690.81. Plaintiff and defendant apparently proceeded on an ad hoc basis during 1975, during which time plaintiff made advances on several occasions and various repayments were credited. On October 17, 1975, plaintiff filed this action to foreclose its mortgages and security interest. At that time the unpaid balance of defendant's indebtedness was $2,634,000.69, plus interest. The District Court found generally in favor of the plaintiff and entered judgment in that amount, plus interest, and ordered foreclosure.

The principal assignments of error on appeal center around the contention that the District Court erroneously struck defendant's counterclaim and set-off which alleged that the plaintiff had fraudulently induced defendant to execute the promissory note and other loan documents by agreeing to loan

and advance funds to the defendant in the calendar year 1974 in the total amount of $4,105,000. The counterclaim and set-off also alleged that the plaintiff did not intend to advance such total funds, and, in fact, failed and refused to advance the total sum of $4,105,000; that by reason of plaintiff's failure to advance the full amount of said funds the defendant was unable to produce certain crops for the year 1975, and was unable to consummate certain cattle transactions which would have realized profits; and that because of plaintiff's failure to advance the full amount of the agreed funds, the defendant was required to sell livestock at a time when the market was depressed, and suffered losses.

The District Court struck those portions of defendant's answer which constituted these counterclaims and set-offs. The court also refused to permit defendant to introduce evidence in support of its allegations and offers of proof as to these matters which were rejected. The court stated that its action was taken upon the ground that the allegations raised collateral issues not allowable as counterclaims or set-offs in a mortgage foreclosure action, and that any issues of fraud were barred in this action under The Tilden Bank v. Retzlaff, 188 Neb. 834, 199 N. W. 2d 734. That case held that a claim for damages for tort cannot be used as a set-off against an action on a contract, nor in a suit on promissory notes secured by real estate mortgages. The rule is not applicable here.

In our view the reference to fraud or misrepresentation in the pleadings may have been inappropriate, but the essential issue involved is one of interpretation of the agreements, instruments, and actions of the parties with respect to the basic underlying agreements here. The counterclaim and set-off alleges that the plaintiff agreed to advance funds to the defendant in the total sum of $4,105,000 during the calendar year 1974; that the plaintiff failed to ad-

vance the full amount of said funds; and that the defendant was damaged by the breach.

The dispute as to the interpretation of the agreements arises in connection with the period between January 7, 1974, and February 28, 1974. Under the defendant's interpretation of the agreements between the parties, the sums advanced on demand notes or against undisbursed commitments on prior loans were not a part of the $4,105,000 transaction because they were made before the note or loan application was signed by defendant. Under the plaintiff's interpretation of the evidence, loan advancements and repayments between January 7, 1974, and February 28, 1974, were only temporary arrangements while awaiting approval, and were all a part of the loans and agreements of the $4,105,000 transaction. The plaintiff's position is that it advanced the defendant the full amount of the $4,105,000 under the correct interpretation of the agreements.

Section 25-813, R. R. S. 1943, provides in part: "The counterclaim * * * must be one in favor of a defendant and against a plaintiff between whom a several judgment might be had in the action, and arising out of the contract or transaction set forth in the petition as the foundation of the plaintiff's claim, or connected with the subject of the action." While this state has not directly considered the question, it is generally recognized that in an action to foreclose a mortgage the defendant may counterclaim or set-off a claim or demand against the plaintiff which is connected with the mortgage transaction and affects the consideration thereof. See, 59 C. J. S., Mortgages, § 619, p. 1086; Owen v. Mecham, 9 Ariz. App. 529, 454 P. 2d 577; Palermo Constr. Co., Inc. v. Lebleu, 272 So. 2d 729 (La. App.).

In Leisure Technology-N.E., Inc. v. Klingbeil Holding Co., 137 N. J. Super. 353, 349 A. 2d 96, the court determined that a counterclaim based on allegations of a breach of the underlying agreement in

relation to which a mortgage had been executed was properly considered in an equitable action for foreclosure of the mortgage. The court said: "Here the thrust of the counterclaim is the assertion that plaintiff had breached the underlying agreement in relation to which the mortgage was executed and interfered with defendants' rights under that agreement. In the usually understood sense of the word, these claims were germane to the foreclosure action."

Case law in this state has recognized the proposition that a mortgage depends for its validity upon the validity of the debt which it secures, and that a lack of consideration is a defense to a foreclosure action. See, Caldwell v. Wells, 174 Neb. 288, 117 N. W. 2d 486; Norton v. Dosek, 161 Neb. 554, 74 N. W. 2d 56; Elm Creek State Bank v. Johnson, 195 Neb. 131, 236 N. W. 2d 838.

In an action to foreclose a real estate mortgage, a counterclaim or set-off which alleges that the plaintiff breached the underlying agreement in relation to which the mortgage was executed, by failing and refusing to advance part of the funds promised under the agreement, is a claim arising out of the contract or transaction forming the foundation of the plaintiff's claim within the meaning of section 25-813, R. R. S. 1943.

In this case there is a mixed question of fact and law as to which version or interpretation of the loan and mortgage agreements and facts is correct. The evidence may or may not be conflicting when it is heard. Nevertheless, the defendant is entitled to an opportunity to prove its allegations. Whether defendant's evidence is sufficient to establish its claims is a question for determination by the fact finder in the trial court, not by this court.

The defendant also contends that the assignment of various life insurance policies given as additional security by certain individual defendants was in-

valid because of a lack of consideration. Section 9-204, U. C. C., makes it clear that consideration may consist of future advances, even if the lender was already under a contractual obligation to make such future advances. It is also undisputed in this case that the plaintiff made substantial advances of funds to the defendant after the execution of the insurance assignments. The fact that the advancements were made to the defendant corporation rather than to the individual assignors is immaterial. See Grady v. Denbeck, 197 Neb. 795, 251 N. W. 2d 164.

Defendant's remaining assignments of error are without merit. The judgment of the District Court is vacated, and the cause is remanded to the District Court for further proceedings in accordance with this opinion.

JUDGMENT VACATED. CAUSE REMANDED FOR FURTHER PROCEEDINGS.

CLINTON, J., concurring in result.