[Civil No. 1893.   Filed July 5, 1921.]

[198 Pac. 1105.]

## ANNIE HORTON, Appellant, v. L. J. HORTON, Appellee.

1. DIVORCE—MARRIAGE IN FOREIGN STATE TO EVADE RESTRICTIONS OF STATE OF DOMICILE HELD NOT INVALID.—Where parties domiciled in Arizona went to New Mexico for the purpose of evading the restrictions provided by Civil Code of 1913, paragraph 3864, as amended by Laws of 1917, chapter 54, forbidding remarriage for one year after divorce, and were there married, such marriage was not thereby rendered invalid in Arizona, the statute not in terms or by necessary implication declaring such marriage void.

2. MARRIAGE—MARRIAGE VALID ACCORDING TO LEX LOCI VALID EVERYWHERE AT COMMON LAW.—Marriage is primarily a contract and under the common-law rule is valid everywhere if entered into according to the *lex loci.*

3. MARRIAGE—LEGISLATURE MAY DETERMINE WHAT MARRIAGES SHALL BE VOID, NOTWITHSTANDING THEY ARE VALID IN STATE WHERE CELEBRATED.—It is within the power of the legislature to enact what marriages shall be void within the state, notwithstanding they are valid in the state where celebrated, whether contracted between parties who were in good faith domiciled within the state where the ceremony was performed or between parties who left the state for the purpose of avoiding its statutes.

APPEAL from a judgment of the Superior Court of the County of Maricopa.  F. H. Lyman, Judge. Judgment reversed with directions to dismiss action.

Messrs. Phillips, Cox & Phillips and Mr. C. F. Ainsworth, for Appellant.

Mr. Earl Anderson, of Phoenix, for Appellee.

1.  Extraterritorial effect of divorce decree or statute prohibiting remarriage after divorce, notes, 15 Ann. Cas. 758; Ann. Cas. 1918E, 1074.

The question of law governing validity of marriage is covered in notes in 57 L. R. A. 155; 11 L. R. A. (N. S.) 1082; 17 L. R. A. (N. S.) 800; 26 L. R. A. (N. S.) 179; and 28 L. R. A. (N. S.) 753.

BAKER, J.—This action was brought by the plaintiff (the parties will be designated in this court as they were in the court below) to obtain a judgment annulling the marriage between the plaintiff and the defendant, celebrated in Deming, New Mexico, on the twelfth day of September, 1918, on the ground that such marriage was void. It appears from the findings of the lower court that the parties both resided in the state of Arizona at the time they contracted the marriage in New Mexico, and that they have ever since retained such residence. It further appears that the defendant was formerly married to one William Crawford, but that on the first day of August, 1918, she was granted an absolute divorce from her husband by the superior court of Maricopa county, Arizona. For the purpose of avoiding the restrictions of the laws of Arizona, prohibiting the marriage of a divorced person until after the expiration of one year from the time the divorce is granted, the parties went to Deming, New Mexico, and were there married. They immediately returned to this state and lived together as husband and wife until about the twenty-sixth day of February, 1920, when the defendant drove plaintiff from the house, since which time the parties have lived separate and apart.

The lower court determined that the marriage in Deming, New Mexico, was void, and entered a judgment annulling it for the reason and on the ground that such marriage was consummated prior to the expiration of one year from the date of the divorce granted to the defendant.

The provisions of the statutes of this state on the subject are contained in section 3839, Revised Statutes of 1913, and section 3864, as amended by chapter 54, Session Laws of 1917, page 75:

"3839. All marriages valid by the laws of the place where contracted, shall be valid in this state;

provided, that all marriages solemnized in any other state or country by parties intending at the time to reside in this state shall have the same legal consequences and effect as if solemnized in this state; parties residing in this state cannot evade any of the provisions of its laws as to marriage by going into another state or country for the solemnization of the marriage ceremony.''

''3864. A divorce from the bonds of matrimony shall not in any wise affect the legitimacy of the children thereof; and either party may, after the dissolution of the marriage, marry again only after one year shall have elapsed from the date of judgment of such divorce; provided however, that if proceedings are begun prior to the expiration of the said one year to set aside said judgment of divorce, then and in that event said parties to the divorce, or either of them, may not marry again until the said proceedings shall have been determined.''

It is conceded that by the laws of New Mexico the marriage between the parties when consummated there was lawful in that state. Does the fact that the parties, being domiciled in this state, left here and went to New Mexico for the purpose of evading the restrictions provided in section 3864 and were there married, render such marriage invalid in this state? We do not think so. It will be observed that the statutes above cited do not in terms, or by necessary implication, declare such a marriage void. The statutes merely in general terms prohibit such a marriage. No penalty is affixed for disobedience.

There is some conflict of authority as stated in 5 R. C. L. 1004—

''Upon the question whether the courts of the state which has enacted such a statute merely in general terms prohibiting such marriage will recognize as valid the marriage of such person occurring out of the state while he is still domiciled within the state. The weight of authority is that if the marriage is valid according to the *lex loci,* it will be upheld even

by the courts of the state which enacted the statute, and in which the parties to the remarriage are domiciled, even though the parties went out of the state to solemnize the second marriage for the express purpose of evading the law of the domicile and of the forum."

In *Commonwealth* v. *Lane,* 113 Mass. 458, 18 Am. Rep. 509, the Supreme Court of Massachusetts, in an opinion by Mr. Chief Justice GRAY, says:

"A marriage which is prohibited here by statute because contrary to the policy of our laws, is yet valid if celebrated elsewhere according to the law of the place, even if the parties are citizens and residents of this commonwealth, and have gone abroad for the purpose of evading our laws, unless the legislature has clearly enacted that such marriages out of the state shall have no validity here. This has been repeatedly affirmed by well-considered decisions."

And this seems to be the overwhelming weight of the better reasoned cases on the subject. *Medway* v. *Needham,* 16 Mass. 157, 8 Am. Dec. 131; *Van Voorhis* v. *Brintnall,* 86 N. Y. 18, 37, 40 Am. Rep. 505; *Thorp* v. *Thorp,* 90 N. Y. 602, 43 Am. Rep. 189; *Griswold* v. *Griswold,* 23 Colo. App. 365, 129 Pac. 560; *Phillips* v. *Madrid,* 83 Me. 205, 23 Am. St. Rep. 770, 12 L. R. A. 862, 22 Atl. 114; *State* v. *Shattuck,* 69 Vt. 403, 60 Am. St. Rep. 936, and notes, 40 L. R. A. 428, 38 Atl. 81; *State* v. *Hand,* 87 Neb. 189, 28 L. R. A. (N. S.) 753, 126 N. W. 1002; *Conn* v. *Conn,* 2 Kan. App. 419, 42 Pac. 1006; *Dudley* v. *Dudley,* 151 Iowa, 142, 32 L. R. A. (N. S.) 1170, 130 N. W. 785; *Hoagland* v. *Hoagland* (Wyo.), 193 Pac. 843; *Hilton* v. *Stewart,* 15 Idaho, 150, 128 Am. St. Rep. 48, 96 Pac. 579.

A number of cases take a contrary view, but an examination of these cases will show that they were based upon statutes expressly declaring the marriages (1) void, or (2) declaring incapacity to con-

tract, or (3) which by express terms suspended the operation of decrees of divorce, or were held to suspend it by necessary implication, or (4) such statutes were held to be declarations of public policy, superseding the *jus gentium* that a marriage valid where performed is valid everywhere. This distinction is pointed out in *Griswold* v. *Griswold, supra.* The cases we refer to are collated in 19 C. J. 183, and footnotes, the principal ones being *Lanham* v. *Lanham,* 136 Wis. 360, 128 Am. St. Rep. 1085, 17 L. R. A. (N. S.) 804, 117 N. W. 787; *Pennegar* v. *State,* 87 Tenn. 244, 10 Am. St. Rep. 648, 2 L. R. A. 703, 10 S. W. 305; *McLennan* v. *McLennan,* 31 Or. 480, 65 Am. St. Rep. 835, 38 L. R. A. 863, 50 Pac. 802; *In re Stull's Estate,* 183 Pa. 625, 63 Am. St. Rep. 776, 39 L. R. A. 539, 39 Atl. 16.

Marriage is primarily a contract. In its constitution it is purely personal and consensual. Considered merely as a contract, it is valid everywhere if entered into according to the *lex loci.* This is the common-law rule. The statute recognizes the common-law rule, "all marriages valid by the laws of the place where contracted shall be valid in this state." The reason for this rule is clearly stated by Mr. Justice STORY in his Conflict of Laws (seventh edition), paragraph 121, where he quotes from the opinion of Sir EDWARD SIMPSON in the historic case of *Scrimshire* v. *Scrimshire,* 2 Hagg. Const. 395:

"All civilized nations allow marriage contracts. They are *juris gentium,* and the subjects of all nations are equally concerned in them. Infinite mischief and confusion must necessarily arise to the subjects of all nations with respect to legitimacy, succession, and other rights, if the respective laws of different countries were only to be observed as to marriages contracted by the subjects of those countries abroad; and therefore all nations have consented, or are presumed to consent, for the common

benefit and advantage, that such marriages shall be good or not according to the laws of the country where they are celebrated. By observing this rule few, if any, inconveniences can arise. By disregarding it, infinite mischiefs must ensue.''

The legislature undoubtedly had the power to enact what marriages shall be void in this state, notwithstanding their validity in the state where celebrated, whether contracted between parties who were in good faith domiciled in the state where the ceremony was performed, or between parties who, being domiciled in this state, left the state for the purpose of avoiding its statutes and married. But the legislature has not seen fit to do so. If the legislature in so many words had said that, if persons residing in this state, in order to avoid the restrictions contained in section 3864, and with the intention of returning to reside in this state, go into another state and there have their marriage solemnized, and after return and reside here, their marriage shall be deemed void in this state, an entirely different state of matters would exist.

The decree of divorce granted by the superior court of Maricopa county to the defendant, Annie Horton, was absolute. Essentially it undid the marriage, and those who were united in it were disunited. The prohibition contained in the statute did not render the judgment intermediate or interlocutory, nor did it impair its integrity. She went into another state and there married. The prohibition contained in the statute was without effect outside the territorial limits of this state.

''It is almost universally conceded that statutes prohibiting the guilty party to a judgment of divorce from marrying again, either for a certain period, or while the other party to the former marriage lives, are without effect outside the territorial limits of the prohibiting state. Since such a prohibition is in the

nature of a penalty it does not apply to divorces granted outside of the state, nor does it carry any disability beyond the borders of the state where in force." 5 R. C. L. 1004.

In view of all the facts and circumstances disclosed by the record, we are of the opinion that the marriage in New Mexico was not void. While the defendant was forbidden to marry again in this state until after the expiration of one year from the time the divorce was granted, she could contract a marriage in New Mexico which, if valid there, will be recognized by the courts of this state. To hold otherwise would render a number of marriages in this state void, and possibly cast an ugly suspicion upon the legitimacy of innocent children.

If our views shall be found inconvenient or repugnant to sound principles, it may be expected that the succeeding legislature will explicitly enact that marriage contracted within another state by parties who have left this state for the purpose of avoiding its laws, and who return and live here, shall be of no force in this state.

The judgment of the lower court is reversed, with instructions to dismiss the action.

ROSS, C. J., and McALISTER, J., concur.