353 P.2d 627

Patsy Ruth **DAVIS**, Widow, In the Matter of Robert Dewey Davis, Deceased, Petitioner,

v.

**INDUSTRIAL COMMISSION** of Arizona, and Sun Supply Company, Respondents.

**No. 6836.**

Supreme Court of Arizona.

June 22, 1960.

Cunningham, Carson & Messinger and Philip W. Messinger, Phoenix, for petitioner.

John R. Franks and Frances M. Long, Phoenix, Donald J. Morgan, James D. Lester, Phoenix, Edward E. Davis, Glen-dale, C. E. Singer, Jr., Phoenix, of counsel, for respondent Industrial Commission of Arizona.

PHELPS, Justice.

By certiorari to this Court petitioner Patsy Ruth Davis, a widow, presents two questions for our determination (1) whether her marriage to the decedent Robert Dewey Davis, on February 27, 1954, was void under the provisions of A.R.S. Subsection B of Section 25–320, by reason of the fact that the marriage was solemnized in Arizona within one year following an Arizona divorce from a former husband, (2) whether the misrepresentations of herself and husband in procuring the marriage license by authority of which they were married rendered said marriage void?

The facts are that petitioner and her deceased husband each were married previously and each were divorced from their respective spouses in the State of Arizona on February 11, 1954. On February 27 following, petitioner and decedent were married at Florence and lived together as husband and wife in Arizona until his death on August 6, 1958. One child was born as a result of their union. On August 6, 1958, decedent suffered an injury by accident arising out of and in the course of his employment with Sun Supply Company, a party hereto, from which he died on the same date.

Petitioner thereafter and within due time made application to the respondent Industrial Commission for compensation under the Workmen's Compensation Act, A.R.S. § 23–901 et seq. The Commission, after hearing, made its findings and award allowing reasonable burial expenses, and awarded to petitioner for and on behalf of their daughter Tannius Jean Davis, the sum of $87.22 per month from September 6, 1958, to continue monthly until such child dies, marries or attains the age of 18 years. But it denied to petitioner any compensation upon the ground that her marriage to decedent on February 27, 1954, within one year following her Arizona divorce, was void under the provisions of the above-designated statute. The Commission further found that their marriage license, obtained preceding said marriage was procured by misrepresentations made in the application therefor and based its denial of award to petitioner in part upon such finding.

This is a question of first impression in this State. A.R.S. Subsection B of Section 25–320 provides that:

"Either party may marry again only after one year has elapsed from the date of the judgment of divorce, but if proceedings are begun prior to the expiration of the one year period to set aside the judgment, then neither party may marry again until the proceedings are finally terminated."

It is true that in Horton v. Horton, 22 Ariz. 490, 198 P. 1105, under the provisions of section 3839, Revised Statutes of 1913, and section 3864 as amended by Chapter 54, Session Laws of 1917, this Court held that a marriage of Arizona residents solemnized in New Mexico was not void although the parties thereto went to New Mexico to marry to evade the provisions of Section 3864, supra. Section 3864 was, in substance, so far as here material, the same as A.R.S. Subsection B of Section 25–320. The restrictive clauses are identical.

Section 3839, Revised Statutes of 1913, considered by the court in that case reads as follows:

"All marriages valid by the laws of the place where contracted, shall be valid in this state; provided, that all marriages solemnized in any other state or country by parties intending at the time to reside in this state shall have the same legal consequences and effect as if solemnized in this state; *parties residing in this state cannot evade any of the provisions of its laws as to marriage by going into another state or country for the solemnization of the marriage ceremony.*" [Emphasis ours.]

The court stated in the Horton decision that the fact that the parties left here and went to New Mexico to marry with intent to evade the restrictions in the bill did not render such marriage invalid in this State

and pointed out that [22 Ariz. 490, 198 P. 1106]:

"* * * It will be observed that the statutes above cited do not in terms, or by necessary implication, declare such a marriage void. The statutes merely in general terms prohibit such a marriage. No penalty is affixed for disobedience."

It later stated that:

"* * * If the Legislature in so many words had said that, if persons residing in this state, in order to avoid the restrictions contained in section 3864, and with the intention of returning to reside in this state, go into another state and there have their marriage solemnized, and after return and reside here, their marriage shall be deemed void in this state, an entirely different state of matters would exist."

We believe the latter statement above applies as well to a marriage solemnized in this state, i. e., unless the statute declares it to be void the court has no authority to invade the legislative field and supply the penalty.

An examination of the authorities indicate that the courts are divided on the question as to the effect of a statute providing that a person obtaining a divorce may not remarry for the period specified therein where the statute does not provide some kind of a penalty for violating such

restriction and where the divorcee does marry within the restricted period.

A number of courts hold that a marriage solemnized during the restricted period is void. We believe, however, that the better reasoned cases and perhaps the majority hold that, it is merely voidable and that it will be held to be void only when the statute declares it to be void. Counsel have not cited any recent cases and we have made quite an extensive research without finding too many.

In Conn v. Conn, 2 Kan.App. 419, 42 P. 1006, and Plummer v. Davis, 169 Okl. 374, 36 P.2d 938, where the statutes are almost identical and provide that it shall be unlawful for either party to marry within six months, and if they did, they would be subject to prosecution for bigamy. The Oklahoma and Kansas courts both held that even with such a penalty attached, a marriage within the period prohibited was only voidable. In In re Kinkead's Estate, 239 Minn. 27, 57 N.W.2d 628, in construing a statute of that state providing that no marriage contracted within six months after either (of the parties) had been divorced from a former spouse, excepting intermarriage between such parties, held that in the absence of a provision declaring such a marriage void, that it was merely voidable and held it could not be collaterally attacked.

In Gress v. Gress, Tex.Civ.App., 209 S. W.2d 1003, 15 A.L.R.2d 700, based on a

statute from which our A.R.S. Subsection B of Section 25–320, supra, appears to have been taken, the Texas court held that a violation of the statutory restriction prohibiting either party to a divorce to marry any other person for a period of twelve months had the effect of rendering such marriage voidable only. These statutes are considered by some courts as a declaration of public policy designed to preserve the marital relation. We believe this to be a reasonable conclusion as to its purpose in this state and that unless the Legislature declares a violation of the restrictive clause therein renders the remarriage void, we feel we are without authority to do so. See, also, State v. Yoder, 113 Minn. 503, 130 N.W. 10, L.R.A.1916C, 686; Opdyke v. Opdyke, 237 Mich. 417, 212 N.W. 95.

■ Having reached the conclusion that the marriage in the instant case is voidable only on the ground above discussed, it is not subject to collateral attack by the Commission after the death of one of the spouses. We found no authority on this point to the contrary. See Annotation 47 A.L.R.2d 1394 on the subject.

Therefore, unless the procurement of the marriage license by false representations concerning their previous marriage and divorce has the effect of rendering the remarriage null and void, the findings and award of the Commission must be set aside.

The case of Johnson v. Johnson, 214 Minn. 462, 8 N.W.2d 620, cited by petitioner is based upon an Iowa statute expressly providing that fraud in procuring license did not render marriage invalid and therefore has no value here.

Ex parte Hollopeter, 52 Wash. 41, 100 P. 159, 160, 21 L.R.A.,N.S., 847, and Switchmen's Union of North America v. Gillerman, 196 Mich. 141, 162 N.W. 1024, L.R.A.1918A, 1117, are squarely in point to the effect that such fraud does not render the marriage void based upon a marriage license thus procured. The reason assigned is that the statute fixes no penalty therefor and in the absence of a declaration in a statute declaring such a marriage to be void, the courts will declare it to be voidable only. The Washington case, supra, declares that while

"* * * A party who procures the issuance of a marriage license by means of a fraudulent affidavit may be convicted of forgery; but a sound public policy has declared that the validity of the marriage in such cases shall not be inquired into. * * *"

■ We adopt the rule laid down by the Washington court as the law of this State. We feel to declare otherwise in view of the fact that it is probable that many marriages have been consummated upon the justifiable inference arising out of the Horton case that, marriages within the state were valid would do irreparable injury in

**122**

the determination of property rights acquired under such conditions in the event of divorce or death of one of the parties; and, would place a stigma upon innocent children, including petitioner's child, born as a result of remarriage during the restrictive period imposed by statute. The Legislature has full power to change the law without consequent injury to anyone if it deems it proper.

Award set aside.

STRUCKMEYER, C. J., and JOHNSON, BERNSTEIN, and UDALL, JJ., concurring.