397 P.2d 211

Johnnie Mae ROY, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona and the Howard P. Foley Company and Jelco, Inc. (Foley-Jelco), Respondents.

No. 8212.

Supreme Court of Arizona.

In Division.

Dec. 10, 1964.

Joe H. Tonahill, Jasper, Tex., Kenneth S. Scoville and LeRoy W. Hofmann, Phoenix, for Johnnie Mae Roy.

Edgar M. Delaney, Phoenix, for respondent Industrial Commission of Arizona; Richard J. Daniels, Frank E. Murphy, Jr., James S. Tegart, Robert A. Slonaker, Ralph E. Mahowald, Jr., Phoenix, of counsel.

UDALL, Chief Justice.

Petitioner, Johnnie Mae (Reeves) Roy, brings this matter before us by means of certiorari to review an award of the Industrial Commission denying her death benefits under the Workmen's Compensation Law. Her claim arises out of the death of Harold Lee Roy, to whom it is alleged she was married at the time of his demise.

No issue is raised regarding the death of Harold Lee Roy being the proximate result of an accidental injury sustained in the course of and arising out of his employment. Decedent was a lineman working for Foley-Jelco Company and was killed almost instantaneously May 9, 1962, while working on the construction of an electrical transmission line tower.

The only dispute involved herein lies in the marital status of decedent and petitioner. Petitioner alleges she and decedent consummated a common law marriage in Texas in the latter part of 1959 or early 1960, and it is admitted that such a marriage is entirely legal in that state. A thorough interstate investigation of this matter was conducted by the Industrial Commission which was assisted in its endeavors by counsel representing two children of the deceased. The children were issue of two marriages previously entered into and dissolved in accordance with the prescribed solemnities. Having been born under such circumstances their rights as surviving dependents of decedent have been recognized.

The sole question for our determination is whether the conclusion of the Industrial Commission, that petitioner was not the lawful wife of decedent at the time of his death, is sustained by competent evidence in the record.

Although our statutes require the solemnization of marriages contracted within this state, A.R.S. § 25-111, they specifically provide for recognition of the validity of marriages valid by the laws of the place where contracted, A.R.S. § 25-112. It therefore must be determined whether under Texas law petitioner and the deceased achieved the marriage status. Respondent concluded that such a status had not been reached and accordingly denied petitioner's claim for death benefits.

Whether a common-law marriage exists has been held by the Texas courts to be a legal question. Moore v. Jordan, 328 S.W. 2d 343 (Tex.Civ.App.). The requisites of such a marriage are: (1) An agreement express or implied between the parties to become husband and wife; (2) cohabitation

in pursuance of such agreement, and (3) a holding out by the parties that they are husband and wife. Ex Parte Threet, 160 Tex. 482, 333 S.W.2d 361; Shelton v. Belknap, 155 Tex. 37, 282 S.W.2d 682.

 A number of years ago this Court had occasion to deal with the presumption of the validity of marriage and stated:

"Both the law and public policy favor matrimony and when it is once shown that a marriage has been celebrated, the contract, the parties' capacity to enter into it, and in fact every act necessary to its validity, will be presumed, in the absence of proof to the contrary. The presumption that it was legal and valid in all respects is one of the strongest known to the law, * * *." Kolombatovich v. Magma Copper Co., 43 Ariz. 314, 318, 30 P.2d 832, 834.

It was pointed out in the Kolombatovich decision, supra, that the evidence to rebut the validity of the marriage must be sufficiently clear and conclusive as fairly to preclude any other result. A more recent decision recognizes the presumption as being very powerful but rejected the argument that the evidence in opposition thereto must be conclusive to overcome it. Hodges v. Industrial Commission, 73 Ariz. 326, 241 P.2d 431. See also Texas Employers' Insurance Association v. Elder, 155 Tex. 27, 282 S.W.2d 371.

As the only issue involved herein is the question of whether petitioner and decedent were married we must look to the record to determine whether the evidence before respondent was sufficient to establish a prima facie case of such marriage, thereby giving rise to the presumption of its validity.

 The record herein indicates that early in the investigation of this matter respondent secured and had before it for consideration a certified copy of the death certificate which contains the information that decedent was married at the time of his death and gives petitioner's name as spouse. It indicates that decedent's brother Ivey signed as informant.

Upon rehearing of this matter by the respondent the testimony of seven witnesses was taken. The petitioner testified in essence that she and decedent visited a Justice of the Peace in Orange, Texas, intending to have a ceremonial marriage. Although she was unsure of the exact date she thought it was on or about March 18, 1960. They were informed that a three day waiting period was necessary. Upon further inquiry the Justice of the Peace informed them of the legality of so-called common-law marriages and they then agreed to be married in that manner. Decedent on that day placed on petitioner's finger a wedding band which she wore until Christmas of 1961 when decedent gave

her a set of rings consisting of both an engagement and wedding ring.

On the day they entered into this agreement they had occasion to be in an establishment in Buna, Texas, owned by a friend of decedent, Anthony Scalisi. Mr. Scalisi testified that he recalled the visit and that decedent told him they had been married that day. He further corroborated petitioner's claim that from that day forward they held themselves out to the public generally as husband and wife. He also had occasion to visit them while they were staying at decedent's father's home in Livingston, Texas, where they presented themselves as husband and wife; and, it was not until after decedent's death that he learned they had not been ceremonially joined in matrimony.

The secretary of the union local in Beaumont, Texas, of which decedent was a member during 1960 and 1961, testified that during this period the couple held themselves out to the public generally as husband and wife.

Decedent's brother Emory testified that when visiting his home in Erath, Louisiana, the couple slept together and otherwise conducted themselves as husband and wife. Three other witnesses testified: one of decedent's ex-wives; a former co-worker of petitioner; and a former co-worker of decedent. In summation it can be said that their testimony, along with that of Emory,

indicated that all was not blissful between the parties, that decedent drank quite heavily and on several occasions physically beat petitioner. She apparently threatened to leave him after these incidents and stated that she and decedent were not married; however, these statements could not change the past and if in fact a valid marriage had been entered into they could not destroy its validity.

The evidence indicates that this couple resided together as husband and wife in approximately twelve communities located in Texas, Louisiana, Kansas, New Mexico, and Arizona. This is certainly consistent with a marriage relationship.

Decedent's brother Ivey did not testify; however, in addition to being informant for the death certificate he submitted two affidavits. In the first one he reiterated the fact that they were married but in the second he repudiates the first to some extent.

Respondent's investigation disclosed that on August 22, 1960, decedent applied for credit in Erath, Louisiana, listing petitioner as his wife, and again, February 9, 1962, he obtained a loan for the purchase of an automobile in Mesa, Arizona, listing petitioner as his spouse. It is also unrefuted in the record that petitioner was paid as surviving spouse on a life insurance policy taken through the labor union.

. It is our opinion that the above facts give rise to the inescapable legal conclusion that under the law of Texas a valid common-law

**102**

marriage between petitioner and decedent was consummated. Once established there is a strong presumption that the marriage continued, and this record does not contain sufficient evidence to rebut it. Therefore, the presumption is controlling and sufficient upon which to predicate an award. Respondent was bound thereby, and must give it effect. See Martin v. Industrial Commission, 73 Ariz. 401, 242 P.2d 286.

Award set aside.

LOCKWOOD, V. C. J., and SCRUGGS, J., concurring.