559 P.2d 1094

Cruz Padilla **GAMEZ, widow of Miguel A. Gamez, Deceased, Cruz Ortiz, guardian ad litem of minor claimant, Veronica Michelle Gamez, Petitioners,**

v.

The **INDUSTRIAL COMMISSION of Arizona, Respondent,**

Gus's Trenching & Pipe Line Co., Inc., **Respondent Employer,**

Royal-Globe Insurance Companies, **Respondent Carrier.**

No. 1 CA–IC 1452.

Court of Appeals of Arizona, Division 1, Department C.

Dec. 30, 1976.

Rehearing Denied Jan. 21, 1977.

Review Denied Feb. 8, 1977.

Stompoly & Even, P. C., by John G. Stompoly, Tucson, for petitioners.

John H. Budd, Jr., Chief Counsel, Phoenix, for respondent The Industrial Commission of Arizona.

Lesher, Kimble, Rucker & Lindamood, P. C., by Michael J. Gothreau, Tucson, for respondent employer and respondent carrier.

HAIRE, Chief Judge, Division 1.

The issue in this case is whether claimant-petitioner can qualify as the widow of the decedent-employee, Miguel A. Gamez, so as to receive death benefits under the Arizona workmen's compensation statutes.

Claimant, Cruz Padilla Gamez and Miguel A. Gamez had planned to have a wedding ceremony and two large receptions in Tucson, Arizona, on June 14, 1969. These plans unexpectedly went awry when the clerk of the Pima County Superior Court in Tucson refused to issue a marriage license because the intended groom was under 18 years of age.

Rather than cancel all the festive plans, the young couple, with their parents, relatives, and friends travelled to Nogales, Sonora, Mexico, and there exchanged wedding vows administered by a priest at a Catholic church. After the ceremony all returned to Tucson where the two wedding receptions were held. Afterward Cruz and Miguel settled in Tucson and lived together, ostensibly as man and wife, for approximately four and one-half years, during which time two sons were born.

For the year before his death, however, Miguel had left his abode with Cruz Padilla Gamez, and at the time of his fatal accident, was living with another woman, who was pregnant with his third child.

All three of Miguel's children are presently receiving benefits under A.R.S. § 23–1046. There is no contention on this appeal that Cruz Padilla Gamez is entitled to any dependency benefits separate and apart from her claim as the surviving widow of the decedent.

It is undisputed that, as the hearing officer found, Cruz and Miguel did not participate in a civil ceremony before the office of the Civil Registry in Mexico as would be required under Mexican law, and never executed a marriage license nor participated in a wedding ceremony in Arizona, as would be required under A.R.S. § 25–111, et seq. Petitioner relies on her participation in the religious ceremony in Mexico and her years of domicile with Miguel living together as man and wife in Tucson, Arizona to establish her claim of entitlement to benefits as the widow of the deceased workman.

The hearing officer found that on the facts as presented:

"It is not felt that Cruz Padilla Gamez qualifies as the lawful spouse, common-law wife, putative spouse, or as a concubine of Miguel A. Gamez.

\*     \*     \*     ⁎     \*     \*

"That Cruz Padilla Gamez has not borne her burden of proof in establishing that she is entitled to widow benefits within the purview of the Arizona Workmen's Compensation Act."

It is from these findings that petitioner seeks review.

In a workmen's compensation proceeding the burden is on the claimant to establish all the elements of his claim. *Russell v. Industrial Commission,* 104 Ariz. 548, 456 P.2d 918 (1969). The concept of marriage under the workmen's compensation statutes is not special, but follows the ordinary domestic relations law of this state. *See Roy v. Industrial Commission,* 97 Ariz. 98, 397 P.2d 211 (1964); 2 Larson, The Law of Workmen's Compensation, § 62.21 (1976). Therefore, in order to qualify as a widow under A.R.S. § 23–1046 petitioner must establish that she and decedent had a valid marriage according to the law of Arizona. There is no contention that petitioner and decedent contracted a valid marriage by compliance with the Arizona statutory requirements, A.R.S. § 25–111;[1] both a mar-

---

1. A.R.S. § 25–111 reads as follows:

"A. A marriage may not be contracted by agreement without a marriage ceremony.
"B. A marriage contracted within this state is not valid unless:
   1. A license is issued as provided in this title, and

2. The marriage is solemnized by a person authorized by law to solemnize marriages, or by a person purporting to act in such capacity and believed in good faith by at least one of the parties to be so authorized."

riage license and a ceremony of solemnization before an authorized person are essential to the validity of a marriage contracted within this state. Arizona does not recognize common law marriages contracted within Arizona. Petitioner's claim therefore rests on A.R.S. § 25–112 A, under which Arizona does recognize the validity of marriages (including common law marriages) valid by the laws of the place where they are contracted:

"A.R.S. § 25–112.

"A. Marriages valid by the laws of the place where contracted are valid in this state."

Petitioner never lived in Mexico as Miguel's wife, and so could not have contracted any common law relationship there. The validity of her marriage thus depends, under A.R.S. § 25–112 A, on whether the church ceremony in Mexico was sufficient to establish a valid marriage under Mexican law.

The hearing officer found, in finding number 6:

"6. That Title 1, Chapter 6, Article 102 of the *Civil Code of Mexico* provides as follows:

"At the place, day and hour designated for the performance of the marriage ceremony, there shall be present before the official of the Civil Registry, the petitioners, or their special attorney in fact, appointed in the manner provided in Article 44, and two witnesses for each one of them to prove their identity."

"Immediately, the official of the Civil Registry shall read aloud the marriage petition, the documents filed therewith, and the proceedings had, and shall question the witnesses as to whether the petitioners are the same persons to whom the petition refers. If the answer is affirmative, he shall ask each of the petitioners if it is their wish to be united in marriage, and if they are agreed, he shall declare them united in the name of the law and of society.

"It would therefore appear that a religious ceremony as participated in by Cruz Padilla Gamez and Miguel Gamez was ineffective in creating a marriage recognized as being lawful in the Country of Mexico without having presented themselves before the official of the Civil Registry."

Petitioner raises four grounds on which she claims that this decision of the hearing officer that she was not validly married should be set aside.

The first ground is that the hearing officer decided the question of the Mexican law without fully conforming to the Arizona R.Civ.Proc. Rule 44(e)(1):

"44(e).1 *Determination of foreign law.* A party who intends to raise an issue concerning the law of a foreign country shall give notice in his pleadings or other reasonable written notice. The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under Rule 43. The court's determination shall be treated as a ruling on a question of law."

The precise contention is that no written notice was given to petitioner that an issue concerning the law of any foreign country was involved.

█ We first note that the rules of civil procedure are not, per se, applicable to workmen's compensation proceedings. A.R.S. § 23–941 F. Nevertheless, the Commission must observe fundamental principles of justice in proceedings before it, *Mutual Benefit Health And Accident Association v. Neale*, 43 Ariz. 532, 33 P.2d 604 (1934), and if petitioner had received no notice at all that the issue at the hearing was to be the validity of her alleged Mexican marriage, fundamental principles of fairness might well have been offended. Petitioner's contention, however, in this regard is very narrow—that there was no *written* notice given that an issue as to foreign law would be involved.

█ This contention is curious in two respects: (1) since the burden was on petitioner to establish the validity of her marriage to the deceased, and she does not argue that she contracted a valid marriage

in Arizona, she must have known that she would have to establish the validity of her marriage under the law of some other jurisdiction. It was neither the hearing officer nor the carrier which relied on the validity of the Mexican marriage, but rather the petitioner herself. (2) While there are no formal pleadings filed in Industrial Commission cases, petitioner cannot claim to have been misled in any manner. The claims file contains a letter from petitioner's prior counsel dated some three months before the scheduled hearing, indicating knowledge on her part that the issue to be decided concerned the validity of the alleged Mexican marriage. Again, at the commencement of the hearing, from the statements of counsel concerning the issues, it is readily apparent that the primary issue to be decided concerned the validity of the alleged Mexican marriage. After all this, at the conclusion of the hearing, the hearing officer requested that the parties file formal written memoranda. The respondents' memorandum clearly raised the issue of the validity of the petitioner's Mexican marriage and cited the applicable Mexican statutes upon which the hearing officer later relied. Under these circumstances we find that petitioner's contentions concerning the applicability of Rule 44(e)(1) are completely without merit.

Petitioner herself had to rely upon the validity of the Mexican proceedings to establish her claim, and she does not dispute that under Mexican law she did not meet the formal statutory requirements for a valid marriage. However, she does urge a somewhat related contention concerning benefits which might accrue under Mexican law from cohabitation with Miguel, even though formal statutory marriage requirements were not met. But the question of whether petitioner's cohabitation with Miguel would be sufficient to establish some entitlement to benefits under Mexican law is entirely irrelevant. We are not herein concerned with Mexican workmen's compensation law. The only question of Mexican law which is involved is whether petitioner contracted a valid legal marriage there. The point at issue on this appeal is whether petitioner is entitled to benefits as a *widow* under Arizona law, and to do so she must qualify as having been married to the decedent under Arizona statutory standards, i. e., A.R.S. § 25–111 or § 25–112. Petitioner never cohabited with Miguel in Mexico and contracted no common law relationship there. Arizona marriage statutes recognize the validity of a marriage valid where contracted, and to that extent only do we look to the law of the foreign jurisdiction. Once the status of marriage or non-marriage has been determined, we look to Arizona's workmen's compensation laws to determine whether the status, as determined by the foreign law, entitles the claimant to Arizona workmen's compensation benefits.

Petitioner next argues that the hearing officer erred in permitting a collateral attack on the marriage after the death of one of the parties. Petitioner relies on the case of *Davis v. Industrial Commission,* 88 Ariz. 117, 353 P.2d 627 (1960) which stated that a marriage which had been solemnized within a year of one of the parties' previous divorce, in violation of the then applicable statute, was voidable on this ground, but was not to be considered void from its inception. The Supreme Court then went on to state:

"Having reached the conclusion that the marriage in the instant case is voidable only on the ground above discussed, *it is not subject to collateral attack by the Commission after the death of one of the spouses.* We found no authority on this point to the contrary. See Annotation 47 A.L.R.2d 1394 on the subject."
(Emphasis added). 88 Ariz. at 121, 353 P.2d at 629.

Analysis of the cases cited in *Davis* and in the cited Annotation reveals that in those cases in which marriage was considered *voidable* there was compliance with the formal requirements of the applicable marriage statutes, but some fact outside the record compliance rendered the marriage subject to attack.

The case of *Horton v. Horton,* 22 Ariz. 490, 198 P. 1105 (1921), on which *Davis*

relied, dealt with a marriage duly solemnized in New Mexico where the parties had gone to New Mexico to avoid the Arizona restrictions on remarriage, but there was no suggestion that the marriage was not perfectly valid under the laws of New Mexico.

The A.L.R. annotation (47 A.L.R.2d 1394) cited in *Davis, supra,* for the proposition that a marriage which is voidable but not void may not be collaterally attacked after the death of one of the parties, deals specifically at § 10 with the problem of ceremonial defects:

"§ 10. Ceremonial defects; proxy marriage.

It is within the legislative power to regulate the matter of marriage and to require that a certain procedure be followed in entering into marriage [citation omitted], and in a number of jurisdictions the statutory procedural and formal requirements are regarded as mandatory, and accordingly common-law marriages are therein rendered invalid [citation omitted]. In most jurisdictions, however, it is held that the statutory provisions dealing with formal solemnization and matters preliminary thereto are directory only and that a nonobservance thereof will not affect the validity of a ceremony as a common-law marriage [citation omitted]."

■ Arizona falls into the first category, in that noncompliance with the statutory formalities renders the marriage invalid. In the instant case, the ceremony of marriage did not comply with the requirements of the place where it was contracted, and so does not comply with A.R.S. § 25–112. We are therefore not faced with a marriage which is either void or voidable—there was no marriage at all. Law from states which recognize the capacity of a common law arrangement to create a presumptively valid marriage is simply not in point, where there is no allegation on the facts here that the parties contracted any type of common law marriage in Mexico.

Petitioner's next attack on the hearing officer's finding is concerned with the presumption that a marriage is valid when an alleged widow is claiming death benefits under the workmen's compensation system. Petitioner relies on *Roy v. Industrial Commission, supra,* but that case dealt with the problem of a common law marriage validly contracted in Texas. The Supreme Court in *Roy* stated:

"A number of years ago this Court had occasion to deal with the presumption of the validity of marriage and stated:

'Both the law and public policy favor matrimony and when it is once shown that a marriage has been celebrated, the contract, the parties' capacity to enter into it, and in fact every act necessary to its validity, will be presumed, in the absence of proof to the contrary. The presumption that it was legal and valid in all respects is one of the strongest known to the law, * *.'

*Kolombatovich v. Magma Copper Co.,* 43 Ariz. 314, 318, 30 P.2d 832, 834.

"It was pointed out in the *Kolombatovich* decision, supra, that the evidence to rebut the validity of the marriage must be sufficiently clear and conclusive as fairly to preclude any other result. A more recent decision recognizes the presumption as being very powerful but rejected the argument that the evidence in opposition thereto must be conclusive to overcome it.

*Hodges v. Industrial Commission,* 73 Ariz. 326, 241 P.2d 431." *Roy, supra.* 97 Ariz. at 100, 397 P.2d at 213

■ The Kolombatovich case, relied on by both petitioner and the court in *Roy,* did not hold that the presumption of validity is irrebuttable, but specifically added the qualifying words "in the absence of proof to the contrary". Here, if we assume that petitioner's presentation of evidence concerning the religious ceremony in Mexico raises a presumption of a continuing and valid marriage, this presumption has been rebutted by respondent's demonstration that such ceremony was insufficient compliance with the laws of Mexico. *Hodges v. Industrial Commission,* 73 Ariz. 326, 241

P.2d 431 (1952). *In Re Estate of Trigg,* 3 Ariz.App. 385, 414 P.2d 988 (1966), cited by petitioner, did rely on the presumption of validity to sustain a common law marriage contracted in Florida, which recognizes such marriages. But the court in *Trigg* specifically stated that in that case there was "no evidence from anyone" as to an alleged mental reservation on the part of the now deceased husband which would have invalidated the common law arrangement. *See In Re Estate Of Trigg, supra,* 3 Ariz.App. at 388, 414 P.2d at 991. Here we do have rebutting evidence sufficient to defeat any alleged presumption.

■ Petitioner claims also that public policy "mandates award of compensatory benefits to the putative spouse of a deceased workman." This Court would emphasize here that the dependent children of the deceased workman are presently receiving benefits, as mandated by the statute A.R.S. § 23–1046, subd. A, subsection (4). The workmen's compensation law cannot be construed, however liberally, to supply benefits to those not within its terms. We note tangentially that in the instant case there were two possible "putative wives", and the decedent employee had been living with the other one for the year before his fatal accident. The circumstance that this other lady is not asserting a claim to benefits on her own account cannot change the fact that petitioner does not herself qualify as a widow of the decedent employee.

*Albina Engine & Machine Works v. O'Leary,* 328 F.2d 877 (9th Cir. 1964), cited by petitioner, is not in point. That case was brought for recovery under the Federal Longshoreman's and Harbor Workers' Compensation Act, which relied on Oregon law to define those who would be entitled to benefits. Although Oregon did not recognize common law marriages, the Oregon workmen's compensation statute, ORS § 656.226 (1953), expressly provided that the widow and children of a common law marriage were entitled to compensation. Another factor important in that case was that the couple had contracted their common law marriage in Idaho, where such marriages were valid, and Oregon, like Arizona, recognized common law marriages if validly contracted in another state.

Since petitioner and the decedent never established a common law marriage in a state in which such marriage would be valid, and since the ceremony in Mexico was insufficient to create a valid marriage there, the decision of the hearing officer that petitioner is not entitled to benefits as a widow under the Arizona workmen's compensation act is affirmed.

FROEB, P. J., and EUBANK, J., concurring.