933 P.2d 1207

**Danny A. MORAN, Plaintiff–Appellant,**

v.

**Helen Marie MORAN, Defendant–Appellee.**

**No. 1 CA–CV 95–0437.**

Court of Appeals of Arizona, Division 1, Department E.

Aug. 6, 1996.

Reconsideration Denied Aug. 29, 1996.

Review Denied March 25, 1997.

Danny A. Moran, Mesa, In Propria Persona.

Helen M. Braun, Mesa, In Propria Persona.

## OPINION

THOMPSON, Judge.

Danny A. Moran (Moran) and Helen M. Braun (Braun) attempted to marry under the terms of a private marriage contract rather than by obtaining a marriage license. Moran asserts that the license requirement violates his religious beliefs and thus is unconstitutional. We hold that the license requirement is valid because it does not substantially burden Moran's religious beliefs and that the parties' purported marriage is invalid because they did not obtain the required marriage license.

### FACTS AND PROCEDURAL HISTORY

In March 1992, Moran and Braun entered into a contract entitled "Marriage Contract." The contract provided that it was irrevocable and based on "the Divine Law of Yahweh, as revealed in Holy Scripture." Also contained in the contract is the statement that the agreement "is not subject to any statute, rule, regulation, or policy of man, in any jurisdiction whatsoever, if said statute, rule, regulation, or policy is contrary to the Principles of Divine Law. Nor are any of its provisions voidable or challengeable in any court in any jurisdiction."

In the agreement, Moran and Braun contracted to enter into "the state of Holy Matrimony, recognizing the Divine Law of Yahweh as the sole authority for creating and regulating the role and status of Husband and Wife." The remainder of the contract reads:

> The Marriage shall be structured according to the Patriarchal Laws of Holy Scripture, and the Authority, Responsibility, and Headship of the Husband shall not, and cannot, be challenged or otherwise interfered with by any civil authority. Any issue of the Marriage shall not be under any form of disability, conventional, legal, or otherwise, to any civil government; shall owe its existence solely to Yahweh; shall, under the Divine Law of Headship, be subject only to the Husband/Father in temporal matters; and cannot be compelled to contract into any form of civil servitude repugnant to and violative of said Divine Law.
>
> All forms of civil law relevant to Marriage and Family not in conformance with the Principles of the Divine Law of Yahweh are specifically repudiated, and the parties declare them to be non-binding and unenforceable upon this union.

The contract includes "Vows of Union," which Moran and Braun signed before a notary public; the vows are much like traditional wedding vows. The union was solemnized on April 5, 1992, in a religious ceremony with family and friends in attendance. The contract was recorded in the Maricopa County Recorder's Office on September 24, 1993.

On September 14, 1993, a daughter was born to the couple. Between November 1993, and February 1994, Braun periodically left Moran, taking the child with her, but then returned to Moran. Braun initiated at least five such temporary separations. In January 1995, Braun again left Moran. Moran filed both domestic relations and juvenile actions seeking to obtain custody of his daughter. Braun filed a petition seeking a protective order. On February 9, 1995, Moran filed the declaratory judgment action that is the subject of this appeal. He sought a judgment declaring that (1) the marriage contract was valid and enforceable, any Arizona statute to the contrary notwithstanding, (2) a valid marriage existed between Moran and Braun, (3) Braun had breached the contract and was not allowed to remove the child from Moran's custody without his consent, (4) Braun must return the child to Moran, (5) Moran was the sole and lawful custodian of the child, and (6) Ariz.Rev.Stat. Ann. (A.R.S.) § 25–111 *et seq.* is constitutionally invalid as applied to the facts of the case.[1]

Braun failed to file an answer to the complaint, and Moran applied for an entry of default. Default was entered on March 15, 1995. Moran subsequently moved for a default judgment. He argued that the marriage contract created a legal and lawful marriage and that A.R.S. §§ 25–111 and 25–121 are invalid, as applied to his marriage contract, because the requirement of a marriage license interfered with his free exercise of his constitutionally-protected religious freedoms, impaired the obligations of contract, and violated equal protection of the law. He pointed out that the consequence of invalidity of the marriage contract due to the state requirement would be that he would not be presumed to be his child's father.

---

1. Moran's complaint named as defendants Braun and Michael Doyle. Doyle had been appointed by the juvenile court as guardian ad litem for the child in the juvenile court action. In addition to the declaratory relief sought, Moran asked for an order permanently enjoining Braun and Doyle from interfering with Moran's custody of the child. The court dismissed Doyle from the action, and he is not a party to this appeal.

Braun filed an answer to the complaint in June 1995. She also moved to set aside the entry of default.

After hearing oral argument on the motion for a default judgment, the trial court found and declared that the purported marriage of Moran and Braun was entered into without the issuance of a marriage license as required by A.R.S. § 25–111 and therefore was not a valid marriage. The court further declared that the contract between the parties was not enforceable as a marriage contract nor could it control the custody of the child of the parties. Because, as a matter of law, the court could not grant the declaratory relief sought by Moran, it ruled that Braun's motion to set aside the entry of default was moot. The court also denied as moot Braun's petition for temporary orders regarding custody and support because the paternity of Moran had not yet been established.

Moran filed a timely notice of appeal from the judgment. We have jurisdiction pursuant to A.R.S. § 12–2101(B).

### DISCUSSION

A. **Validity of A.R.S. §§ 25–111 and 25–121**

Moran argues that A.R.S. §§ 25–111 and 25–121 are invalid because they unduly burden his exercise of his religion. He states that his belief is that he must obey Yahweh (God) rather than men. According to Moran, the marriage license requirement is the state's attempt to replace his God with a statutory scheme such that if he has to comply with the statutory scheme he will be forced to put another god before his God. He contends that the license requirement is invalid under the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb (RFRA); Article 1, § 10, clause 1 of the United States Constitution; and the First, Fourth, Fifth, Ninth, Tenth, and Fourteenth Amendments to the Constitution.

The requirements for a valid marriage in Arizona are set forth at A.R.S. § 25–111(B):

B. A marriage contracted within this state is not valid unless:

1. A license is issued as provided in this title, and

2. The marriage is solemnized by a person authorized by law to solemnize marriages, or by a person purporting to act in such capacity and believed in good faith by at least one of the parties to be so authorized.

Additionally, A.R.S. § 25–121(A) provides:

No persons shall be joined in marriage within this state until a license has been obtained for that purpose from the clerk of the superior court in any county of this state.

██ As set forth by these statutes, both a marriage license and a solemnization ceremony before an authorized person are required for a marriage contracted within Arizona to be valid. *See Gamez v. Industrial Comm'n,* 114 Ariz. 179, 181–82, 559 P.2d 1094, 1096–97 (App.1976); *In re Trigg's Estate,* 3 Ariz.App. 385, 387, 414 P.2d 988, 990 (1966), *aff'd,* 102 Ariz. 140, 426 P.2d 637 (1967). Therefore, because there is no dispute that Moran and Braun did not obtain a marriage license as required by A.R.S. §§ 25–111 and 25–121, their purported marriage, notwithstanding their private "marriage contract," is not valid.

Relying on *Meister v. Moore,* 96 U.S. (6 Otto) 76, 24 L.Ed. 826 (1877), Moran argues that A.R.S. §§ 25–111 and 25–121 are directory and not mandatory. He contends that the *Meister* court ruled that absent a statute specifically rendering certain marriages void, statutes requiring the issuance of a marriage license must be construed as directory rather than mandatory. Moran misreads *Meister.* The Court there stated:

A statute may declare that no marriages shall be valid unless they are solemnized in a prescribed manner; but such enactment is a very different thing from a law requiring all marriages to be entered into in the presence of a magistrate or a clergyman, or that it be preceded by a license, or publication of banns, or be attested by witnesses. Such formal provisions may be construed as merely directory . . . .

Thus, the Court indicated that a statute that declares that a marriage is not valid unless

certain requirements occur is mandatory. Section 25–111 contains this mandatory language.

■ Because application of A.R.S. §§ 25–111 and 25–121(A) means that Moran and Braun are not legally married, we examine whether this statute violates Moran's right to exercise his religion. We conclude that the statutory requirement of obtaining a marriage license does not violate either the constitutional or federal statutory protections of Moran's right to practice his religious beliefs.

■ We start our analysis by considering the state's interest in marriage. Marriage is a basic civil right, and the freedom to marry is recognized as a fundamental right within the protective ambit of the equal protection clause of the Fourteenth Amendment. *Nelson v. Minner,* 604 F.Supp. 590, 592 (S.D.Iowa 1985), *aff'd,* 786 F.2d 1172 (8th Cir.1986); *Boynton v. Kusper,* 112 Ill.2d 356, 98 Ill.Dec. 208, 213, 494 N.E.2d 135, 140 (1986) (citing *Loving v. Virginia,* 388 U.S. 1, 12, 87 S.Ct. 1817, 1823, 18 L.Ed.2d 1010 (1967)). Nevertheless, the state is also vitally concerned with the establishment of marriages because marriage is a relationship in which "the public is deeply interested, for it is the foundation of the family and of society, without which there would be neither civilization nor progress." *Nelson,* 604 F.Supp. at 593 (quoting *Maynard v. Hill,* 125 U.S. 190, 211, 8 S.Ct. 723, 729, 31 L.Ed. 654 (1888)). The licensing and performance of marriage and the rights, duties and obligations derived from marriage are of paramount importance to the state and are subject to its control. *Rubino v. City of New York,* 125 Misc.2d 936, 480 N.Y.S.2d 971, 972 (Sup.1984).

■ It is well-established that states have the power to determine how its residents may enter into marriage. *United States v. Seay,* 718 F.2d 1279 (4th Cir.1983), *cert. denied,* 467 U.S. 1226, 104 S.Ct. 2677, 81 L.Ed.2d 873 (1984). *See also In re Guardianship of Mikulanec,* 356 N.W.2d 683, 689 (Minn.1984) (marriage is "a social relationship subject to the state's police powers"). Accordingly, "[r]easonable regulations that do not significantly interfere with decisions to enter into the marital relationship may legitimately be imposed." *Zablocki v. Re-*

*dhail,* 434 U.S. 374, 386, 98 S.Ct. 673, 681, 54 L.Ed.2d 618 (1978). *See also Califano v. Jobst,* 434 U.S. 47, 53, 98 S.Ct. 95, 99, 54 L.Ed.2d 228 (1977); *Nicpon by Urbanski v. Nicpon,* 145 Ill.App.3d 464, 99 Ill.Dec. 458, 461, 495 N.E.2d 1193, 1196 (1986). Among the matters the state may control are the forms and procedures necessary to solemnize marriages. *Nelson,* 604 F.Supp. at 592.

Arizona has codified its procedures necessary to form legal marriages at A.R.S. § 25–111. Only two procedural steps are required—obtaining a marriage license and solemnizing the marriage by a person authorized to do so. Moran challenges only the marriage license requirement.

■ A court may determine whether a state act imposes a substantial burden on an individual's exercise of religion. *See Fordham Univ. v. Brown,* 856 F.Supp. 684, 697 (D.D.C.1994) (regulations prohibiting federal funding of telecommunication equipment for sectarian programming did not burden free exercise of religion, much less substantially burden it). We conclude that Arizona's marriage license requirement does not substantially burden Moran's free exercise of his religion.

Moran has not shown that obtaining a marriage license from the state conflicts with any of his religious beliefs. He says that the law of marriage he invokes is the superior law of "the Divine Creator and Legislator of the Universe" and that he is absolutely bound to follow and obey that law; however, he does not say how obtaining a marriage license interferes with following that law.

He does contend that the requirement for obtaining the state's permission to marry elevates the state to the status of a creator. We note, however, that Moran incorrectly characterizes the issuance of a marriage license as the state's "permission" to marry because "permission" implies consent to a person's choice of a mate and circumstances of the marriage. The only statutory instances in which the state can be said to permit or not permit marriages is for marriages between certain blood relatives as prohibited by A.R.S. § 25–101 and for marriages involving persons under eighteen years of age which

require parental consent pursuant to A.R.S. § 25–102. These statutes do not affect Moran and are not at issue in this appeal. In issuing marriage licenses, the state "permits" all marriages except where the parties are close blood relatives or where one or both are minors and they lack parental consent. We fail to see how this sort of "permission" would elevate the state to the status of Moran's creator.

■ Furthermore, obtaining a marriage license would not infringe on Moran's ability to solemnize the marriage in a religious ceremony or to observe his religious beliefs within the marriage.[2] He would be free to enter into a premarital agreement that would comport with his religious beliefs as long as the agreement was not unconscionable. *See* A.R.S. § 25–201(A) ("Parties intending to marry may enter into agreements not contrary to good morals or law."); *Williams v. Williams*, 166 Ariz. 260, 262, 801 P.2d 495, 497 (App.1990) (antenuptial agreements are enforceable if they do not violate public policy). Thus, the requirement to obtain a marriage license to form a valid marriage does not conflict with Moran's ability to exercise his religious beliefs.

Moran argues that for A.R.S. §§ 25–111 and 25–121 to be valid, the state must show that it has a compelling governmental interest in requiring a marriage license as a condition for a valid marriage. He notes that the state, which did not appear in the action, has made no such showing.

■ As discussed above, we find that the marriage license requirement does not substantially burden Moran's exercise of his religion. The "compelling governmental interest" test is applied under RFRA only if the government has substantially burdened a person's exercise of religion, and the government wishes to attempt to justify its action. *See* 42 U.S.C. § 2000bb–1. Because Moran has not met this threshold showing of sub-

stantial burden, we need not consider whether a compelling governmental interest is present.

Moran also argues that application of A.R.S. §§ 25–111 and 25–121 to invalidate his marriage burdens his religious beliefs concerning his custody of his child. If he was not married to Braun when their child was born, he must establish his paternity before he can petition for custody of or visitation with the child. Moran asserts that he cannot pursue a paternity action without denying the validity of his marriage, which would require him to violate his belief that the marriage is valid under the tenets of his religion.

We conclude that Moran has no such dilemma. As the trial court wisely pointed out to him at oral argument, once the court declared the marriage invalid, Moran could file his paternity action based on the court's declaration that the marriage is invalid; he would not have to say that he believes the marriage is invalid. Therefore, Moran is not forced by the state to personally deny the validity of his marriage in order to establish paternity and seek custody of his child.

**B. Enforceability of the Contract**

■ Moran seems to argue that even if A.R.S. §§ 25–111 and 25–121 are valid, the contract between him and Braun is nevertheless enforceable. We disagree.

As noted above, Moran and Braun were not married because they did not obtain a marriage license. Therefore, their private marriage contract did not establish a marriage, and any terms of the contract relating to the establishment of a marriage are unenforceable. Likewise, any rights given to Moran arising out of the purported marital relationship cannot be enforced.

■ The other portions of the contract that Moran would like to enforce give him custody of the parties' child. Those

---

2. We do note, however, that the state might regulate a person's observance of religious beliefs in a marriage if those beliefs led to acts that violated criminal or civil laws. Despite the constitutional right to believe in any religious doctrine, the right to act upon or exercise those beliefs is not absolute. *Rubino*, 480 N.Y.S.2d at

972. "The very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests." *Wisconsin v. Yoder*, 406 U.S. 205, 215–16, 92 S.Ct. 1526, 1533, 32 L.Ed.2d 15 (1972).

terms are also unenforceable. The state may intrude into the parent-child relationship due to the state's interest in the future well-being of minor children residing in this state. *Appeal in Pima County Juvenile Action No. J–77188,* 139 Ariz. 389, 392, 678 P.2d 970, 973 (App.1983). Thus, parents cannot bind the court by their agreements concerning custody. *Solomon v. Solomon,* 5 Ariz.App. 352, 355, 427 P.2d 156, 159 (1967). Accordingly, Moran and Braun could not by their agreement determine the custody of their child, particularly where Braun disputes the agreement, the paternity of Moran is not legally established, and the matter went before the court.

In sum, the provisions of the parties' marriage contract are unenforceable.

### C. Default Judgment

■ Moran argues that the trial court should have granted him a default judgment because default was entered against Braun, and she did not show good cause for failing to timely answer the complaint. We conclude that the trial court was correct in refusing to enter judgment for Moran, despite the entry of default, because Moran was not legally entitled to the declaratory judgment he sought.

■ An entry of default establishes as proven all well-pleaded facts. *Southern Arizona School for Boys, Inc. v. Chery,* 119 Ariz. 277, 281, 580 P.2d 738, 742 (App.1978). However, the defendant is not held to have admitted conclusions of law. *Id.* at 281–82, 580 P.2d at 742–43. In exercising discretion as to the entry of a default judgment, the court may consider the merits of the plaintiff's substantive claims. *Eitel v. McCool,* 782 F.2d 1470, 1471 (9th Cir.1986). If the substantive claims lack merit, the trial court does not abuse its discretion in declining to enter a default judgment. *Aldabe v. Aldabe,* 616 F.2d 1089, 1092–93 (9th Cir.1980).

The entry of default against Braun operated as an admission of the facts pled by Moran. However, the declaratory relief sought by Moran also involved the interpretation and application of statutory law, specifically A.R.S. §§ 25–111 and 25–121. Entry of default did not entitle Moran to an application of the law that was contrary to the law. In other words, even though default had been entered, the trial court could not have declared that the parties' marriage contract formed a valid marriage where such a declaration would clearly be contrary to Arizona law. Accordingly, the court correctly declined to enter the declaratory judgment sought by Moran, entered judgment that the purported marriage was invalid, and determined that Braun's motion to set aside the entry of default was moot.

### D. The State as a Party

Moran argues that the state and/or attorney general did not have to be named as a party in his declaratory judgment action. He notes that the trial court stated in oral argument that in order for Moran to obtain declaratory relief concerning the constitutionality of a statute, he was required to name the state as a party.

The court did make that statement in oral argument, but it did not make any such finding or ruling in its judgment nor did it base its denial of the declaratory judgment sought by Moran on the fact that the state was not a party to the action. Therefore, we need not consider this issue.

### E. Admissibility of Videotape of Ceremony

■ As his final issue, Moran argues that the trial court erred in refusing to admit into evidence a videotape of the religious ceremony that solemnized the marriage of Moran and Braun. We disagree. Whether the marriage was solemnized was not an issue at the oral argument at which the videotape was offered. The issue was whether the parties' failure to obtain a marriage license invalidated their purported marriage. Accordingly, the videotape was irrelevant, and the trial court did not err in precluding its admission.

### *CONCLUSION*

The marriage of Moran and Braun is invalid, and Moran must prove his paternity be-

fore he can petition for custody of or visitation with the child. We affirm.

GERBER, P.J., and VOSS, J., concur.